67 P.3d 85

**In re Snake River Basin Adjudication
Case No. 39576.**

**LU RANCHING CO., Movant–Appellant,**

v.

**UNITED STATES of America and State
of Idaho, Participants–Respondents.**

No. 27599.

Supreme Court of Idaho,
Boise, November 2002 Term.

April 3, 2003.

McQuaid, Meltzer, Bedford & Van Zandt, LLP, San Francisco, California, for appellant. Elizabeth P. Ewens argued.

U.S. Department of Justice, Washington, for respondent United States of America. William B. Lazarus argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent State of Idaho. Harriett A. Hensley argued.

SCHROEDER, Justice.

The LU Ranching Co. (LU Ranching) challenges the procedures for giving notice to interested parties involved in the Snake River Basin Adjudication (SRBA), maintaining that they violate the minimum due process requirements established by Section I of the Fourteenth Amendment of the United States Constitution and Article I of the Idaho State Constitution. In the alternative LU Ranching requests this Court to grant it relief from default judgments entered against it. The United States of America (United States) and the State of Idaho (State) stipulate to the facts but oppose LU Ranching's legal positions.

### I.

### BACKGROUND AND PRIOR PROCEEDINGS

LU Ranching is a family-owned cattle operation in Southern Idaho and is the preference holder and grazing user of the Cliffs, South Mountain, Cow Creek Individual,

McKay FFR, Chimney Pot FFR, and Lowry FFR federally administrated grazing allotments. In 1992 LU Ranching filed 17 state-law based water right claims for domestic/de minimis stock water rights in Basin 55—land which LU Ranching uses pursuant to a Bureau of Land Management permit and which is within Idaho Department of Water Resource Area 6. In 1993 the United States also filed de minimis stock water rights claims in Basin 55.

In 1997 pursuant to Idaho Code §§ 42–1409, 42–1411, 42–1412, an investigator for the Idaho Department of Water Resources (IDWR) reviewed water rights claims and prepared a Director's Report for Reporting Area 6 and all the state-based domestic and stock water claims of LU Ranching and the United States. The report detailed and listed all existing and applied for water rights claims. On July 30, 1997, LU Ranching was personally served by first class mail with a letter of notice entitled: *Notice of Director's Report Reporting Area 6 (IDWR Basins 51, 55, and 61) for Small Domestic and Stock Water Rights.* The notice stated in relevant part:

> A complete copy of the Director's Report, listing all of these domestic and stock water rights claimed under both state and federal law, is available at the SRBA courthouse in Twin Falls and the locations listed on the third page of this notice. Copies of the report can be made, but you may be charged for copying and mailing.
>
> . . . .
>
> The complete Director's Report contains recommendations to the SRBA Court on your water right and all other small domestic and stock water rights in your area. The Court will decide how it will decree all water rights. The Director's recommendations in the full report are listed in two sections of the report:
>
> . . . .
>
> Also included in the complete Director's Report are descriptions of the United States' claims for domestic and stockwater rights under federal law. The Director does not investigate these claims and makes no recommendations whether they should be granted or not. Sometimes the

United States claims one right under both federal and state law. These are called "dual based" claims.

> If you want to review someone else's water right you need to look at the complete Director's Report which is available at the SRBA courthouse in Twin Falls and the locations listed on the third page of this notice. Copies of the report can be made, but you may be charged for copying and mailing.
>
> . . . .
>
> If you disagree with any element of the recommendation for your water right or anyone else's water right and want to be heard in court, file an objection with the SRBA Court.

The notice stated that all objections to water rights as listed in the report must be received by the SRBA court before December 5, 1997, which gave LU Ranching 120 days within which to file. The notice also stated that IDWR would file its recommendation to the SRBA court after that deadline, and that the SRBA court would issue partial decrees on uncontested claims after February 3, 1998. Further, the notice stated that a notice would be sent on court dates for objections that were filed, but that no other notices would be forthcoming on any other adjudications or decisions. The notice also provided the following information:

> If you have questions about the SRBA, public information brochures are available at any IDWR office. Maps and aerial photography of this reporting area, as well as assistance in using the maps and the photography, are available at the two IDWR offices in Boise. You are also welcome to call IDWR at any of its offices on the SRBA Court. You may also want to contact an attorney to assist you.

The notice set forth the addresses and phone number of the SRBA court and the various Department of Water Resources offices. LU Ranching was not informed of any actual conflict to its water claims, except as it would find if it reviewed the Director's Report. This procedure tracks exactly the requirements set forth in I.C. §§ 42–1411(5) and (6) and 42–1412.

On August 7, 1997, the SRBA court published its docket sheet informing participants that the Director's Report had been filed. In December of 1997 the United States, under I.C. § 42–1412 and AO1, filed timely objections to LU Ranching's claims in Basin 55, asserting that the United States was the rightful owner of those lands and that LU Ranching had no rightful claim to the water. LU Ranching neither filed a timely counter objection to the United States' claims in Basin 55 nor a response to the United States' objections to LU Ranching's claims. Only in March of 2000 did LU Ranching examine the Director's Report to identify stock claims filed by the United States. Meanwhile, in April of 2000, the SRBA had completed entering partial decrees on Basin 55, granting the United States its beneficial use claims and reserved water rights claims.

The State of Idaho did file timely objections to the United States' water claims in Basin 55. They were adjudicated and settled. The State of Idaho appears here solely to defend the procedures used by the SRBA. In August of 2000 LU Ranching filed a motion in the SRBA to set aside these partial decrees on the basis of mistake, inadvertence, surprise, and/or excusable neglect pursuant to rule 60(b)(1) of the Idaho Rules of Civil Procedure and on the basis that the notice LU Ranching received did not meet the minimum requirements for due process as mandated by the Idaho and United States Constitutions. Both arguments were rejected by the SRBA court. LU Ranching filed its appeal.

## II.

### LU RANCHING'S DUE PROCESS RIGHTS WERE NOT VIOLATED

#### A. Standard of Review

■ LU Ranching is challenging the constitutionality of Idaho Code §§ 42–1409, 42–1411, 42–1412 and Regulation AO1. Such a challenge is a question of law over which this Court exercises free review. *Goodman Oil Co. v. Idaho State Tax Comm'n*, 136 Idaho 53, 55, 28 P.3d 996, 998 (2001). The challenge must show the statute to be uncon-stitutional as a whole, without any valid application. *State v. Newman*, 108 Idaho 5, 11 n. 7, 696 P.2d 856, 862 n. 7 (1985). Factors to be considered in determining the adequacy of process are the importance of the private interest at stake, the risk of an erroneous deprivation of rights given the processes at hand and the probable value, if any, of additional or substitute procedural safeguards, and the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976).

#### B. Due Process

■ Some of the factors in *Mathews v. Eldridge* are apparent. The private interest at stake is great. The right to water is a permanent concern to farmers, ranchers and other users. The importance of the government's interest is great, as the steward of a finite resource that is the lifeblood for much of the state's economy and quality of life. The other elements to be considered require more analysis.

LU Ranching contends that requiring parties to sift the Director's Reports so that they notify themselves as to claims potentially or actually adverse to their own is too onerous and risks the deprivation of water rights, maintaining that water right claimants who object to or knowingly file conflicting claims against other known and identified water claimants must personally serve such parties when pursuing adverse decrees. LU Ranching relies upon *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), which stand for the proposition that minimum due process requires notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and affords them an opportunity to present their objections. LU Ranching also cites *Bear Lake County v. Budge*, 9 Idaho 703, 75 P. 614 (1904), which was a water law case

that held reasonable service in that case was personal service when the defendants were known and located.

*Mullane* concerned an adjudication of a common trust fund in which the only notice given of the commencement of the action was notice by publication in a newspaper, as directed by New York law. *Mullane*, 339 U.S. at 307–12, 70 S.Ct. at 654–56, 94 L.Ed. at 867–72. This was held to be adequate in regards to all beneficiaries whose whereabouts could not be ascertained but inadequate for beneficiaries whose places of residency were known by the special guardian of the trust. The Court stated that the law requiring only notice by publication was "not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 319, 70 S.Ct. at 659, 94 L.Ed. at 876. Thus, the Court held that, "the New York Banking Law § 100–c(12) is incompatible with the requirements of the Fourteenth Amendment as a basis for adjudication depriving known persons whose whereabouts are also known of substantial property rights." *Id.* at 320, 70 S.Ct. at 660, 94 L.Ed. at 876. *Mennonite* affirmed this principle in a case involving a purchaser of land at a tax sale who sought to quiet title against a mortgagee. *Mennonite*, 462 U.S. at 792–93, 103 S.Ct. at 2708–09, 77 L.Ed.2d at 183–84,. Before the tax sale, the county was required to give personal service to the owner, to post a notice on the county court house, and to put a notice in the local paper for three weeks. The county was not required to give notice to the mortgagee and did not. *Id.* at 793, 103 S.Ct. at 2708–09, 77 L.Ed.2d at 183–84. The Court found the mortgagee to have substantial property rights in the land and that the notice failed, stating that when a "mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." *Id.* at 798, 103 S.Ct. at 2711, 77 L.Ed.2d at 187. As for water rights, this Court found such a principle applicable in adjudication of water rights in *Bear Lake County v. Budge,* 9 Idaho 703, 75 P. 614 (1904). There the notice procedure—service in local newspaper of general circulation—used to inform local water users

of the adjudication was found inadequate. The court stated that, "reasonable service of summons is actual service upon all known defendants who reside in and can be found in the county when the suit is brought." *Id.* at 711, 75 P. at 616.

These cases concern notice of the commencement when a party of the action must be alerted to the fact of a lawsuit. The United States Supreme Court has insisted on less exacting standards for notice of subsequent procedures and actions when parties know proceedings may affect their rights. *See Texaco, Inc. v. Short,* 454 U.S. 516, 536, 102 S.Ct. 781, 795–96, 70 L.Ed.2d 738, 755–56 (1982) (claimant has right to notice of commencement of adjudication to determine ownership of certain mineral rights but not prior to the lapse of those mineral rights under a self-executing statute); *United States v. Locke,* 471 U.S. 84, 108–10, 105 S.Ct. 1785, 1799–1801, 85 L.Ed.2d 64, 84–86 (1985) (claimants whose mining claims were extinguished under the Federal Land Policy and Management Act for failure to make timely filings were not denied due process by receiving no notice of the deadline, for they had received an initial notice of the passage of the act). In *Weigner v. City of New York,* 852 F.2d 646 (2d Cir.1988), the court discussed this concept concerning a tax foreclosure action by New York City, surmising that *Mullane* and *Mennonite* required notice of the pendency of the action, but noting that once "the City sent this notice, it was not required to send additional notices as each step in the foreclosure proceeding was completed or when each of the available remedies was about to lapse." *Id.* at 652.

Whether the actions through which the water right decrees were rendered against LU Ranching can be considered a subsequent proceeding to the commencement of the SRBA is a point disputed by LU Ranching. This argument is premised on the idea that once the SRBA was commenced, water claims are dealt with in subcases that will adjudicate the rights. Under AO1 (2)(p), (10)(c, k), (14) and (15), the SRBA subcases have their own discovery schedule, scheduling orders and trial. Thus, each final decree arising from the subcases is a result of a

distinct litigation tract and distinct decision by the SRBA judge. Regardless, there is no doubt that LU Ranching was aware of the commencement of the SRBA and aware that action concerning its claimed rights and the rights of others in the region would be adjudicated. It received notice of the Director's report, the nature of that report, its location, and the way to access the report, as well as the offer of technical assistance if necessary. AO1 (6)(d) allows one to subscribe to the SRBA docket sheet for a nominal fee. The method of notice given was reasonably calculated to give LU Ranching and all other claimants the information to pursue and protect their rights. In fact, LU Ranching found the information when it examined the Director's report. Requiring personal service of all potentially adverse claims could well involve a flood of paper that would do no more than what is done by existing procedures.

In *Joyce v. Rubin*, 23 Idaho 296, 303, 130 P. 793, 795 (1913), this Court stated:

> It must be remembered that a suit to determine the priority and amount of water that each user from a stream is entitled to is somewhat different from the ordinary action, and the general rules of pleading have never been technically observed or strictly enforced in this class of cases, for if they were, in many cases where there are a hundred or more parties to the action the pleadings would be very voluminous.

The Court noted the unique status of water adjudication and the SRBA in *In re SRBA Case No. 39576*, 128 Idaho 246, 254–55, 912 P.2d 614, 622–23 (1995), which stated:

> This Court has long accepted that water right adjudications present unique circumstances, often requiring a departure from established rules of procedure. . . .

> When the SRBA was authorized by statute in 1986, no reasonable method of initiating the proceeding, providing notice to potential claimants, examining the Snake River Basin or preparing a report of that system, or means of objecting to that report or claimed water rights within that system was provided by the existing Rules of Civil Procedure. In order for the Legislature to provide for an adjudication, including the claims within the scope of the McCarran Amendment, and in light of the absence of applicable Rules of Civil Procedure, it was necessary for the Legislature to provide special procedural rules for the initiation of the SRBA.

Other courts have focused on the unique qualities of water adjudication in deciding what satisfies due process. In *In re Rights to the Use of Gila River*, 171 Ariz. 230, 830 P.2d 442 (1992), the Arizona Supreme Court reviewed the same problem of parties objecting, filing documents or otherwise initiating actions subsequent to the beginning of a massive water adjudication with notice procedures similar to those of the SRBA. *Id.* 452–53. The court stated that, "[t]he most significant factor in this case is the sheer multitude of the parties to the adjudication," and concluded that a requirement of personal service would be too onerous, impractical and confusing in its employment, defeating any purpose for meaningful notice. *Id.* at 453. The same considerations are applicable in this case.

Despite claims that following the procedures in the SRBA would require a Herculean effort, LU Ranching was able to recognize the conflicts and get notice of the objections to its water claims once it actually looked at the Director's Report. LU Ranching simply looked too late. Its difficulties arise from a lack of timely attention, not inadequacy of notice.

## III.

## LU RANCHING IS NOT ENTITLED TO RELIEF PURSUANT TO RULE 60(b)(1)

LU Ranching contends it has a right to relief under IRCP 60(b)(1), allowing relief from final judgment on the grounds of mistake, inadvertence, surprise, or excusable neglect, because it had not been able to complete its investigation into the Unites States' claims by the time the final decrees were entered due to the complex nature of the Director's Reports and the failure to obtain timely notice in violation of due process. As previously noted, LU Ranching received adequate and timely notice of the materials it

needed to act. It was advised in the notice of how to proceed with questions and offered technical assistance if necessary. It found the information when it looked.

The district court was correct in observing that the failure by LU Ranching was not how "a reasonably prudent person under the circumstances" should have acted. There is neither excusable neglect nor mistake in this case.

## IV.

## CONCLUSION

The decisions of the district court are affirmed. The respondents are awarded costs.

Chief Justice TROUT, Justices WALTERS and KIDWELL and Justice Pro Tem WOODLAND, concur.