97 P.3d 453

**IDAHO SCHOOLS FOR EQUAL EDUCATIONAL OPPORTUNITY;** Moscow School District # 281; Lapwai School District # 341; Mullan School District; # 392; Potlatch School District # 285; Whitepine Joint School District # 286; Kendrick Joint School Boise District # 283; Cascade School District # 422; St. Maries Joint School District # 41; Orofino Joint School District # 171; Culdesac Joint School District # 342; Genesee Joint School District # 282; Highland–Craigmont Joint School District # 305; American Falls School District # 381; Rockland School District # 382; Valley School District # 262; Challis Joint School District # 181; Horseshoe Bend School District # 73; Richfield School District # 316; Boundary County District # 101; Kamiah Joint District # 304; Wallace School District # 393; Nez Perce District # 302; Cottonwood District # 242; Midvale School District # 433; Post Falls School District # 272; and Bonner County School District # 82, Plaintiffs–Counterdefendants–Respondents,

and

Brian Silflow and Ganel Silflow, by and through their parents, Dale and Patti Silflow, husband and wife; Donald Paul Crea, by and through his father, Gary Crea; Andy Cook, by and through his father, Larry Prally; Tavia Gilbert, by and through her parents, Terry and Carolyn Gilbert; Gregory Lamm, by and through his mother, Kathy Lamm; Sara Kae Gomez, by and through her parents, Kathleen and Jose Gomez; Dietrich Stella and Jennifer Stella, by and through their parents, Charles and Rebecca Stella; Gregory Daniels, by and through his mother, Nancy Daniels; Gina M. Decker, by and through her parents, Gene and Linda Decker; Jennifer A. Alder, by and through her parents, Max and Judy Alder; Angela F. Gerrard, by and through her parents, Roger and Rhoda Gerrard; Catherine A. Sporleder, by and through her mother; Joanne Sporleder; Morgan Rounds and Seth Rounds, by and through their parents, Ivan Rounds and Brenda Rounds; Kelli Longeteig, by and through her parents, Willfred Longeteig and Beverly Longeteig; Don Hoffer, by and through his mother, Kit Hoffer; Sarah Malloy, by and through her mother, Susie Malloy; Kory Turnbow, by and through his mother, Donagene Turnbow; Shawna Olsen, Shannon Olsen and Ryan Olsen, by and through their mother, Teresa Olsen; Krista Anne Goetz, by and through

her father, Allan J. Goetz; Chad Knee, by and through his parents, Kelly and Karen Knee; on behalf of themselves and all other school people of the State of Idaho similarly situated, Plaintiffs–Respondents,

v.

The STATE of Idaho, Defendant–Counterclaimant–Appellant.

No. 29616.

Supreme Court of Idaho,
Boise, April and June 2004 Terms.

Aug. 25, 2004.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. Michael D. Gilmore argued.

Huntley Park LLP, Boise, for respondents. Robert D. Huntley, Jr., argued.

TROUT, Chief Justice.

The State of Idaho appeals the judgment of the district court finding that House Bill 403 of the 2003 Idaho legislative session (HB 403) unconstitutional. The Plaintiffs, Idaho Schools for Equal Education Opportunity (ISEEO), an unincorporated association of school district superintendents of several Idaho public school districts and several parents of school children attending public schools in Idaho, brought suit against the State over a decade ago alleging that the

Legislature has failed to carry out its constitutionally mandated duty to provide "a general, uniform and thorough system of public, free common schools" as required by Article IX, § 1 of the Idaho Constitution. After three prior appeals to this Court, the Legislature adopted HB 403 last year, at least in part as an effort to resolve the lawsuit. During the pendency of an appeal to this Court on the underlying issues of this case, this Court remanded the matter back to the district court for a determination of the constitutionality of the newly adopted HB 403. After argument, the district court declared the legislation to be unconstitutional in its entirety and void. That issue then came to this Court on appeal.

## I.

### Factual and Procedural Background

The present appeal is related to three prior appeals brought before this Court beginning in 1993. These appeals stem from a lawsuit filed against the State by ISEEO alleging that the Legislature has not performed its constitutional duties under Article IX, § 1 of the Idaho Constitution, which requires that "it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools."

In the first appeal, *Idaho Schools for Equal Educational Opportunity, et al. v. Evans, et al.*, 123 Idaho 573, 850 P.2d 724 (1993) (*ISEEO I*), this Court held that ISEEO, school districts, and parents of students attending public schools have standing to bring suit against the state when they allege a "distinct palpable injury" as a result of the failure of the public school funding system to provide necessary funding and they are unable to provide a thorough education to the students of their districts.

In the second appeal, *Idaho Schools for Equal Education Opportunity v. Idaho State Board of Education*, 128 Idaho 276, 912 P.2d 644 (1996) (*ISEEO II*), this Court reversed the district court's dismissal of the action, finding that the subsequent changes to the definition of "thorough" made by the Legisla-

ture that year did not render the controversy moot.

And, in the third appeal, *Idaho Schools for Equal Education Opportunity v. State*, 132 Idaho 559, 976 P.2d 913 (1999) (*ISEEO III*), this Court again reversed the district court's dismissal of the suit, finding that the Legislature has a duty to provide a means for school districts to fund facilities that offer a safe learning environment. This Court also ruled in *ISEEO III* that the State could not file a third party action against the school districts based on its argument that any failure to provide a thorough education in safe facilities was due to the school districts' discretionary decisions, mismanagement, failure to levy more property taxes and their administration of their districts, finding that the school districts bear no responsibility for any State failure to establish and maintain a thorough system of public, free common schools.

In *ISEEO III* this Court remanded the case back to the district court, directing it to "conduct a trial or other appropriate proceeding to determine whether the Legislature has provided a means to fund facilities that provide a safe environment that is conducive to learning." After a trial the district court concluded that the system of school funding established by the Legislature was insufficient to meet the constitutional requirement because reliance on local property taxes alone to pay for major repairs or the replacement of unsafe school buildings was inadequate for those districts with a low property tax base or low per capita income. The district court initially deferred any remedial action to allow the Legislature time to address its findings. However, when the Legislature, in the district court's opinion, had failed to take appropriate action, the district court began implementing its remedial measures, including a phase of information gathering and the appointment of a special master.

In the 2003 legislative session the Idaho Legislature passed HB 403, which established among other requirements, that the plaintiffs and the State sue school districts where unsafe school buildings exist; that venue for these suits would be changed to the judicial districts in which the defendant

school districts lie; that the parties of the current case would be dismissed if they did not follow the procedures of HB 403; and that state district courts could impose an educational necessity levy to repair or replace unsafe school buildings. On June 19, 2003, this Court ordered the district court to decide all motions regarding the constitutionality of HB 403. The district court then rendered its decision on October 27, 2003, declaring HB 403 unconstitutional in its entirety and the State now appeals.

## II.

### Standard of Review

A challenge to the constitutionality of a statute is a question of law over which this Court exercises free review. *Lu Ranching Co. v. U.S.*, 138 Idaho 606, 608, 67 P.3d 85, 87 (2003). "The challenge must show the statute to be unconstitutional as a whole, without any valid application." *Id.* "When a constitutional challenge is made, every presumption is in favor of the constitutionality of the statute, and the burden of establishing the unconstitutionality of a statutory provision rests upon the challenger." *Osmunson v. State*, 135 Idaho 292, 294, 17 P.3d 236, 238 (2000).

## III.

### Standing

The State maintains that the school districts represented in ISEEO have no standing to bring suit against the State because HB 403 has abolished their right to sue the State without first following the procedures set forth in HB 403. In fact, many of the State's arguments relating to whether or not HB 403 violates the separation of powers in establishing procedural rules for the courts are based on this position and, therefore, we address this issue at the outset.

The State bases its assertion that the school districts have been deprived of their right to bring suit on several propositions. First, the State argues that under Article V, § 13 of the Idaho Constitution, the Legislature is entitled to establish procedural court rules when necessary, including rules which revoke a party's standing in pending litigation. This portion of the Constitution reads:

> The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution....

The State maintains that because of the protracted length of the ISEEO litigation, it is necessary to alter the proceedings of the courts in this case and take away the right of the school districts to bring suit. The State cites *In re SRBA Case No. 39576*, 128 Idaho 246, 912 P.2d 614 (1995) as supporting authority. In that case, this Court upheld the Legislature's statutory withdrawal of the Director of the Idaho Department of Water Resources as a party to the general water adjudication pursuant to Art. V, § 13. The State maintains that HB 403's revocation of the rights of the school districts to sue is a similar legislative action that should be upheld. The *SRBA* case does not provide authority for the Legislature's actions, as the State has argued. In the *SRBA* case, we allowed the State to remove legislatively the Director of the Department of Water Resources from the Snake River Basin Adjudication proceedings on the grounds that the Director served the equivalent role in the proceedings as a stakeholder in an interpleader action. We found: "[T]he director is really a disinterested party. The only interest the director has is to see that all rights are accurately adjudicated. The director does not oppose a claim, trying to subvert a valid claim. Nor does the director stand to gain if a claim is invalidated." 128 Idaho at 257, 912 P.2d at 625. Previously in that case, we determined that the creation of the SRBA and its accompanying court procedural rules was a necessary action on the part of the Legislature in the absence of an applicable venue and proper procedures for initiating such actions as contemplated by the SRBA. ISEEO is not a stakeholder in an interpleader action in this lawsuit—it is the very plain-

tiff seeking relief. It is certainly not a disinterested party that has no concern for the outcome of this case. Furthermore, the State did not create the venue for this current proceeding involving ISEEO in any more particular or specialized fashion than any other lawsuit in this state.

The State also disputes this Court's ruling in *ISEEO I*, in which we held that the "sue or be sued" provision of I.C. § 33–301 established an " 'unqualified grant of power . . . carr[ying] with it all powers that are ordinarily incident to the prosecution and defense of a suit at law or in equity.' As the school districts allege they are being deprived of the funds they are entitled to under art. 9, § 1, they have the authority under I.C. § 33–301 to maintain this suit." *Idaho Schools for Equal Educational Opportunity v. Evans*, 123 Idaho 573, 585, 850 P.2d 724, 736 (1993). The State counters this decision by arguing that HB 403 has effectively repealed I.C. § 33–301; however, there is no language in HB 403 referring to I.C. § 33–301, nor has there been any legislation apart from HB 403 from which to infer that I.C. § 33–301 has been repealed. The grant of power given by this statute remains unchanged.

The State made similar arguments in *ISEEO I* as it does now, arguing that a school district cannot sue its creator. However, this Court upheld the school districts' right to seek relief when they allege they are being deprived of funds they are entitled to, and that right cannot be legislatively withdrawn when it is based not only on a statutory grant of standing but a constitutional mandate over the Legislature as well to fulfill this very duty.

ISEEO, having standing, proceeded with this case over a decade ago. The State's assertion that it has the power legislatively to remove ISEEO as a party by revoking its standing at this point in the litigation is in error. The standing of the plaintiffs is upheld.

## IV.

### I.C. § 6–2215 as Amended by HB 403

■ The district court found, and ISEEO argues on appeal, that HB 403 is a special law regulating a particular pending lawsuit. Furthermore, ISEEO argues that I.C. § 6–2215 as amended by HB 403 seeks to alter several of the Idaho Rules of Civil Procedure, the core body of rules regulating procedures in Idaho courts.

■ Article III, § 19 of the Idaho Constitution provides: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . Regulating the practice of the courts of justice." As to what constitutes a special law, this Court has ruled:

> A special law applies only to an individual or number of individuals out of a single class similarly situated and affected or to a special locality. A law is not special simply because it may have only a local application or apply only to a special class if, in fact, it does apply to all such cases and all similar localities and to all belonging to the specified class to which the law is made applicable. A statute is general and not special if its terms apply to and its provisions operate upon all persons and subject matters in like situations.

*School Dist. No. 25, Bannock County v. State Tax Commission*, 101 Idaho 283, 291, 612 P.2d 126, 134 (1980). "The test for determining whether a law is local or special is whether the classification is arbitrary, capricious, or unreasonable." *Concerned Taxpayers of Kootenai County v. Kootenai County*, 137 Idaho 496, 499, 50 P.3d 991, 994 (2002). In evaluating whether legislation passed by the Idaho Legislature was special or local, this Court has found that when the Legislature was pursuing a legitimate interest in protecting citizens of the state and the statute passed was not arbitrary, capricious, or unreasonable, then the law was not special. *Kirkland v. Blaine County Medical Center*, 134 Idaho 464, 470, 4 P.3d 1115, 1121 (2000). Consequently, in order for HB 403 to be characterized as a general law, it must be for a legitimate legislative interest and cannot be arbitrary, capricious, or unreasonable.

Section One of House Bill 403 of the 2003 Idaho Legislature reads:

SECTION 1. LEGISLATIVE FINDINGS. The Legislature finds that over twelve years of litigation regarding Idaho's system of school funding has not productively used the state's resources to ensure that there is a general, uniform and thorough system of public, free common schools. Trial was held in the spring of 2000, but no final judgment or appealable order has been issued and no findings of fact specifying which school districts are unable to provide safe and healthy school facilities under the current system of school financing have been issued. Current proceedings are likely to be even more protracted if a special master is appointed and there is further delay until final judgment, an appealable order, or findings of fact specifying which school districts are unable to provide safe and healthy school facilities under the current system of school financing have been issued. The Legislature therefore determines it can best exercise its constitutional duty to establish and maintain a general, uniform and thorough system of public, free common schools by altering the procedure of the existing lawsuit to bring it under the Constitutionally Based Educational Claims Act, which will allow the parties to focus on districts having the most serious health and safety problems, and to provide a remedy of an educational necessity levy as necessary to abate unsafe or unhealthy conditions.

Particular to these findings is the Legislature's indication that this bill was specifically drafted in response to the ISEEO lawsuit and that the bill was meant to apply to the ISEEO case by "altering the procedure of the existing lawsuit" by changing the language of the Constitutionally Based Educational Claims Act (CBECA) statutes. Section Three of the bill changes the wording of I.C. § 6–2215, which had previously excluded the ISEEO case from its application, to specifically include any case which had not reached final judgment at the effective date of the legislation; that could only mean the currently pending ISEEO case. Section Three also contains provisions that act to dismiss certain parties to the ISEEO suit and to redefine the defendants and plaintiffs in this litigation under new claims and causes of action. Section Three also establishes that venue for all such suits brought against the school districts pursuant to this law shall be brought in the judicial district where the school district is located.

From the above it is very clear that, though the State asserts on appeal the Legislature intended to create a general law applicable to a wide class of parties, the Legislature was in reality enacting special legislation directed specifically at the ISEEO case and particularly, the Plaintiffs and their cause of action against the Legislature. Though the State argues that HB 403 applies to all school districts equally, the language of the bill plainly states that it is meant to specifically apply to the current litigation. HB 403 is aimed at essentially disbanding the ISEEO case and restructuring it in a manner that destroys the Plaintiffs' cause of action against the Legislature. This is a special enactment designed only to affect one particular lawsuit and is clearly a special law in violation of Article III, § 19.

ISEEO also argues that HB 403 attempts to undermine several of the Idaho Rules of Civil Procedure in an unconstitutional violation of this Court's rulemaking authority set forth in Article V, § 13. The most significant rules of procedure that appear to be affected by HB 403 are Rules 62 and 41. HB 403 provides for the dismissal of all parties who do not file new suits according to the procedures set forth in HB 403. This dismissal follows a legislatively directed stay of proceedings—already expired—in the current ISEEO case in which parties are effectively given the choice of abiding by HB 403's new rules for venue, parties, joinder, and other requirements, or facing dismissal of their suit.

I.R.C.P. 41 controls the dismissal of suits and, whether dismissal is voluntary or involuntary, no dismissal may occur unless approved by the court. Section 6–2215(3) of the Idaho Code as amended by HB 403 states in part:

Dismissal of entities not parties and transfer of records in pending lawsuit. School districts that were parties to a lawsuit that

presented constitutionally based educational claims or counterclaims ... that are not defendants in any complaint filed pursuant to subsection (2) of this section shall no longer be parties and shall be dismissed from any proceedings that were suspended.

This portion of the legislation directly contradicts Idaho court procedure and effectively dismisses parties to a pending lawsuit without any court action.

Likewise, I.R.C.P. 62 lists the various circumstances under which a *court* may issue a stay of proceedings. Section 6–2215(2) of the Idaho Code as amended by HB 403 directs in part: "[P]rocedure for pending lawsuits. If this chapter applies to a lawsuit pending on the effective date of this amendment to this section, all proceedings in the lawsuit shall be suspended for fifty-six (56) days from the effective date of this amendment to this section." Again, the Legislature purports to make decisions regarding this litigation that only the district court can make.

Article V, § 13 sets forth: "the legislature shall provide a proper system of appeals, *and regulate by law, when necessary, the methods of proceeding in the exercise of their powers* of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution ..." (emphasis added). The State has asserted that the protracted nature of this school funding lawsuit has created a necessity entitling the Legislature to rewrite the rules of court procedure. This notion is evident in the legislative findings of HB 403 as well as the State's arguments.

The primary question that arises here is whether the Legislature itself can say when a law altering procedural rules is necessary. This Court has held that it cannot, finding: "[W]hether legislative action in this context is necessary within the meaning of Article V, Section 13 is a constitutional determination to be passed upon by this Court." *SRBA,* 128 Idaho at 254, 912 P.2d at 622. Therefore, the question is whether there are changed circumstances permitting amendments to the Court's rules of procedure as contemplated by HB 403.

Obviously, the State has an interest in the outcome of this case that is driven by more than policy or practical concerns. The Legislature is the defendant, being sued in district court for failing to meet its constitutional obligations. That the Legislature is attempting to invoke its powers as a branch of government to direct the outcome of a case in which it is the defendant cannot entirely be attributed to the rationale that it is merely seeking to effectuate the best outcome for all involved or that its decision is entirely policy oriented. The State maintains that the necessity in HB 403 arises from the inaction of the courts and plaintiffs, and it is the Legislature's good faith effort to bring an end to costly litigation. However, contrary to the arguments of the State, this lawsuit was not brought to seek action from the plaintiffs or the courts, but rather, from the Legislature to fulfill a constitutionally mandated duty. The State is attempting to end legislatively the ISEEO suit and effectively remove itself from any further responsibility or liability. Such a motive may be a necessity as viewed by the Legislature but, given the claims made by the school districts, it is not sufficiently necessary so as to justify rewriting the Court's rules of procedure. Such a law is arbitrary, capricious, and unreasonable.

Consequently, we find that there is no necessity present pursuant to Article V, § 13 of the Idaho Constitution meriting the legislature's attempt to legislate itself out of this lawsuit by rewriting the Idaho Rules of Civil Procedure. We also find HB 403 to be a special law pertaining to the practice of the courts aimed specifically at this lawsuit and these plaintiffs, and accordingly find that portion of HB 403 amending I.C. § 6–2215 of the Idaho Code is unconstitutional.

## V.

### I.C. 6–2214 as Amended by HB 403

■ The next issue we address pertains to the portion of HB 403 that seeks to create an educational necessity levy, amending portions of I.C. § 6–2214. This portion of HB 403 reads in part:

Notwithstanding any other provisions in this chapter, the district court may impose an educational necessity levy for the purpose of raising revenues to abate unsafe or unhealthy conditions that have been identified by findings of fact or a judgment of the district court, by a consent agreement that has been accepted (with or without modification) by the district court or by a local school district plan to abate unsafe or unhealthy conditions that has been accepted (with or without modification) by the district court. The district court shall impose an educational necessity levy if it finds that the school district has no alternative source of revenue to use to abate unsafe or unhealthy conditions that have been identified by findings of fact or judgment of the district court, by a consent agreement that has been accepted (with or without modification) by the district court or by a local school district plan to abate unsafe or unhealthy conditions that has been accepted (with or without modification) by the district court.

According to the facts established regarding the educational necessity levy, this levy would be implemented by a district court only after it embarks on a protracted, consuming process of investigation and an evaluation as to the conditions of school districts being sued and their deficiencies. Once a district court arrived at a determination as to what deficiencies a school district had and what amount of money was necessary to remove them, the court would then have to evaluate available funding sources to provide for the costs, including an evaluation of the entire existing school district budget. After finding there were insufficient funds for these costs or no funds altogether, the district court would then be forced to impose the educational necessity levy upon the taxpayers of the school district to raise the necessary funds to correct the deficiencies.

After the first oral argument in this appeal, this Court requested the parties provide additional briefing and argument on, *inter alia*, the constitutionality of HB 403 under the separation of powers doctrine expressed in Article II, § 1 of the Idaho Constitution. This provision states:

The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

One of the issues addressed by the parties was whether the amendments to I.C. § 6-2214 as approved in HB 403 violate the separation of powers doctrine by delegating to the judiciary the power to tax. The State maintains there is no violation of the separation of powers because the district courts would merely be implementing a tax created and authorized by the Legislature.

The State urges this Court to read the language of HB 403 that authorizes a district court to impose an educational necessity levy, as simply a statutory mandate permitting the district court to authorize the school district to impose the levy when it becomes necessary. The State suggests that the district court has no discretion with respect to the levy; that when a school district reaches the point where funds must be expended to correct unsafe or unhealthy conditions and no alternate resources can be found to use, the district court has no alternative and must then direct the school district to proceed with the levy authorized by the Legislature. However, that ignores the plain meaning of the statutory amendments and requires this Court to read into the statute words which simply are not there.

The State cites two Idaho cases in support of its argument, claiming that Idaho courts in the past have imposed taxes upon the citizenry in like manner as that required by the educational necessity levy. The State cites *Board of Trustees of Joint Class A School Dist. No. 151 in Cassia and in Twin Falls Counties v. Board of County Com'rs of Cassia County*, 83 Idaho 172, 359 P.2d 635 (1961) and *Independent School Dist. No. 12 of Lincoln County v. Manning*, 32 Idaho 512, 185 P. 723 (1919). However, there are distinct differences between these cases and the imposition of an educational necessity levy by

a district court. First, in neither of these two cases did the Legislature direct the courts to impose the levies. The *Twin Falls* case involved the issuance of a writ of mandate in which this Court ordered a county government to properly execute a levy it was obligated to carry out by statute. In the *Manning* case, the district court was merely enforcing the directive of the Legislature that had been given to the counties themselves, not to the courts. In neither of these cases were the courts an integral part of the legislation creating the levy and in neither of these cases were the courts the originator of the levy process, as is the case with HB 403.

Additionally, in neither of these cases were the courts given such a broad role at the outset. These were cases where the parties had turned to the courts to enforce matters that would otherwise be outside the judicial process. Pursuant to HB 403, however, the courts are drawn into a protracted and detailed process of investigation and evaluation as to the conditions of schools and their deficiencies, and the courts are then called upon, not just to enforce a levy already established, but to be the original decision maker as to how much that levy should be according to its own investigation. This type of process was never contemplated by either of these two cases.

The State also cites federal cases in support of its argument that the courts are given authority to impose taxes of their own in order to carry out remedies for constitutional violations. The State cites *Missouri v. Jenkins*, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990), quoting: "[A] court order directing a local government body to levy its own taxes is plainly a judicial act within the power of a federal court." However, *Jenkins* was a case in which a divided United States Supreme Court ruled in a school desegregation case that a federal district court had the authority to order a local state government to impose a tax that would carry out the prescribed program of desegregating schools in the Kansas City area. The Supreme Court ruled that even though the state may have laws which prohibit such taxation without a vote of those to be taxed, the powers of the federal judiciary were great enough to override the state authority in order to correct an unconstitutional situation under the United States Constitution: segregated schools.

However, in a lengthy dissenting opinion joined by three other justices, Justice Stevens vehemently opposed the majority in its decision to allow the judiciary to usurp the role of the legislature in imposing taxes. Justice Stevens found that "[O]ur cases throughout the years leave no doubt that taxation is not a judicial function. Last Term we rejected the invitation to cure an unconstitutional tax scheme by broadening the class of those taxed. We said that such a remedy 'could be construed as the direct imposition of a state tax, a remedy beyond the power of a federal court.'" 495 U.S. at 64, 110 S.Ct. at 1670, 109 L.Ed.2d at 62. He further asserted:

> The nature of the District Court's order here reveals that it is not a proper exercise of the judicial power. The exercise of judicial power involves adjudication of controversies and imposition of burdens on those who are parties before the Court. The order at issue here is not of this character.... It has the purpose and direct effect of extracting money from persons who have had no presence or representation in this suit.... [Such a] tax was more than an abuse of discretion, for any attempt to collect the taxes from the citizens would have been a blatant denial of due process.

*Id.* at 66, 110 S.Ct. at 1671, 109 L.E.2d at 63. Justice Stevens also noted that "the Judiciary is not free to exercise all federal power; it may only exercise the judicial power." *Id.*

In response to *Jenkins*, some state courts have distinguished this case when dealing with the ability of the state judiciary to impose taxes on citizens. In *Butt v. State of California*, 4 Cal.4th 668, 15 Cal.Rptr.2d 480, 842 P.2d 1240 (1992), the California Supreme Court refused to grant the request of an individual who sought to divert state monies from one state fund to another in order to prevent the early closure of schools in a school district during a financial crisis. In refusing to order the legislature to divert the money, the California court observed:

We are aware that in *Missouri v. Jenkins,* supra, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31, the United States Supreme Court upheld the power of federal courts to order local tax levies to enforce judicial remedies for unconstitutional school segregation. However, even if the federal Constitution permits federal courts to impose far-reaching remedies for State government violations of federal constitutional rights, it does not follow that California courts are exempt from the constraints imposed by the California Constitution upon their power to invade the functions of a coequal branch of State government. Indeed, the California Constitution's separation of powers clause precludes any branch from usurping or improperly interfering with the essential operations of either of the other two branches. Nothing in this opinion should be interpreted as sanctioning or immunizing such unconstitutional interference, or as addressing the question of the appropriate remedies that may be invoked in the event one branch improperly impinges on the essential operations of a coequal branch.

15 Cal.Rptr.2d 480, 842 P.2d at 1262, n. 26.

And, in *Pinto v. Alabama Coalition for Equity,* 662 So.2d 894 (1995), a case in which the underlying educational claims are substantially similar to those of the ISEEO case, Justice Houston of the Alabama Supreme Court wrote a special concurrence in which he expressed:

The dreaded "taxation without representation" may occur if the trial court, for whom the [intervenors] had no right to vote, attempts to impose taxes in the remedy phase of this trial to fulfill the duties imposed upon State officials in the liability phase. The assurance that there would be no taxation without representation was a concept upon which this nation was founded. If that concept is not sufficient to provide a class of taxpayers "a direct, substantial, and legally protectable interest in the proceeding," I do not know what is!

662 So.2d at 902–03 (Houston, J., concurring).

In understanding *Jenkins,* it is important to note that the Supreme Court's holding directed a federal district court to order a state governmental entity to impose a tax that was contrary to the state law because the larger issue of the federal unconstitutionality of segregation trumped the state law constitutional issues. What *Jenkins* did not say, as the California Supreme Court noted, was that a state judiciary may contravene its own constitution in implementing judicial remedies that violate the separation of powers prohibition of its own state constitution. Consequently, *Jenkins* does not give state judiciaries carte blanche over the state legislature's designated power to tax and, as suggested by Justice Stevens, such taxing by the judiciary is a due process violation where those to be taxed have no representation in the process, as they do in the legislative and municipal process.

The State's position is that the educational necessity levy would not be created by the judiciary, only imposed by it. The State views the levy as the last in a long line of steps carried out by the district court to determine school conditions, determine necessary corrective action, determine funds available to make these corrections and, if there are insufficient funds elsewhere, authorize the school board to carry out the levy without a vote. In other words, the State deems this levy to be procedural, not substantive. Given this position, it is still clear that this is a delegation of taxing authority. It will be the judiciary that carries this levy out, not the Legislature. Though the Legislature created the levy process, it will take no part in how it is determined in amount, how it is implemented, or even if it will be utilized in any given situation. Though the levy may be the last step of many, a district court has been given the authority to impose a tax on school district taxpayers if it determines there are unsafe or unhealthy conditions and that there are presently not enough funds to correct them.

The Idaho cases cited by the State are examples of situations in which the courts have been called upon to uphold levies created by the Legislature and imposed upon state governmental entities. In both cases the legislative power of taxation was delegated directly to the governmental entity—a

county government and a school district—through enactment of legislation. HB 403, on the other hand, creates a legislative process in which taxing authority is given directly to a separate branch of government—the judiciary—whose powers and purposes were not meant to involve the taxation of Idaho citizens. It is one thing for the courts to direct a governmental entity to carry out its legislatively assigned duty to tax; it is quite another for the court itself to impose the tax. Though the State is effectively seeking to get rid of the middleman in this transaction by giving the courts the power up front to fix the problem, in doing so it ignores foundational principles of separation of powers.

"Just as Article II of the Idaho Constitution prohibits the Legislature from usurping powers properly belonging to the judicial department, so does that provision prohibit the judiciary from improperly invading the province of the Legislature." *In re SRBA Case No. 39576,* 128 Idaho 246, 255, 912 P.2d 614, 623 (1995). "The power to tax, or to exempt from taxation, remains with the Legislature." *Williams v. Baldridge,* 48 Idaho 618, 630, 284 P. 203, 207 (1930). Because I.C. § 6–2214 as amended by HB 403 assigns the power to tax to the judiciary, it violates the Idaho Constitution.

## VI.

### Whether the Trial Judge Should Continue to Hear this Case

One of the issues raised by the State in the underlying school funding case relates to the trial court's authority to order that a special master be appointed to investigate the conditions of the school buildings in Idaho and that the State be required to pay the special master's fees. The State filed a petition for a writ of prohibition seeking to stop any further actions by the special master and the district judge then sought legal counsel to provide assistance in responding to the petition for the writ. The State now asserts the district judge should not be permitted to continue to sit on any aspect of this case because she is now a participant by filing a counterclaim responding to the writ. The State argues that Idaho Judicial Canon 3.E(1)(d)(i) and (v) require that a judge disqualify herself when she is a party to the proceeding or is likely to be a material witness in the proceeding and because the trial judge has done both, she cannot continue to sit on the case. We disagree.

The mere filing of a response to a petition for a writ has not made the judge herself a party to this ISEEO case, nor is there any indication she could be required to act as a material witness in it. Under these circumstances, to follow the State's argument would be tantamount to allowing the State to remove a judge whenever it wished simply by filing a petition for a writ against the judge requiring a response. The district judge's impartiality in this case has not been credibly brought into question by her justified response to the State's petition and there is no basis for finding that she cannot continue to sit on this case.

## VII.

### Other Issues

Though other issues were raised and argued by the parties, given our disposition on the issue of the constitutionality of HB 403, we do not find it necessary to address those remaining issues.

## VIII.

### Conclusion

Based on the reasoning articulated in this opinion, we hold that HB 403, amending portions of I.C. §§ 6–2214 and 6–2215 is unconstitutional as a special law directed at one particular lawsuit and is also violative of the separation of powers doctrine of the Idaho Constitution. This matter will now proceed to briefing, oral argument and decision on the underlying issues raised by the appeal. We award costs on appeal to Respondents.

Justices KIDWELL and BURDICK, and Justices Pro Tem HART and HURLBUTT concur.