146 P.3d 664

**In re Idaho Code 1–2218.**

**TWIN FALLS COUNTY, Petitioner–Respondent,**

v.

**CITIES OF TWIN FALLS AND FILER, Idaho; Cities of Kimberly and Hansen, Idaho; and City of Buhl, Idaho, Respondents–Appellants.**

**Nos. 30889–30891.**

Supreme Court of Idaho, Twin Falls, November 2005 Term.

Oct. 5, 2006.

Wonderlich & Wakefield, Twin Falls, for appellants Cities of Twin Falls and Filer, Idaho. Fritz A. Wonderlich argued.

Hollifield Law Office, Twin Falls, for appellants Cities of Kimberly and Hanson, Idaho. William R. Hollifield argued.

Hepworth, Lezamiz & Janis, Chtd., Twin Falls, for appellant City of Buhl, Idaho. William L. Nungester appeared.

Grant P. Loebs, Twin Falls County Prosecuting Attorney, Twin Falls, for respondent. Jennifer R. Gose–Eells argued.

TROUT, Justice.

This case arose after Twin Falls County (County) asked the cities of Twin Falls, Kimberly, Hansen, Filer, and Buhl (Cities) to increase their contributions to the County for the Cities' proportionate use of the County's courthouse facilities. The district judges ordered the Cities to pay a portion of the costs of operating the magistrate's division located within the County's courthouse. Because we

conclude the district judges were without statutory authority to order the Cities to reimburse the County for these expenses, we reverse.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

There is only one County courthouse facility for Twin Falls County, the Theron Ward Judicial Building. This building houses the district court as well as the magistrate's division of the district court. The County provides facilities, equipment, personnel, supplies, and other expenses to operate the entire facility for both the district court and the magistrate's division. The Cities use the magistrate's division to process misdemeanor and infraction cases, and for various civil proceedings. In the past, the Cities have reimbursed the County for a proportionate share of the cost of maintaining the courthouse attributable to use of the magistrate division.

In April of 1995, the County requested an increased contribution from the Cities for the cost of operating the magistrate's division. Initially, the County and Cities were unable to reach an agreement over costs. After a district judge ordered the parties to come to an agreement or appear before the assembled panel of district judges for a hearing, the parties reached an agreement. Nevertheless, in 2003, the County concluded the 1995 cost-sharing agreement was outdated and requested an order reflecting current costs. The district judges issued an order adjusting the Cities' contributions based upon the County's calculations. The Cities objected to the amount of the ordered reimbursement and, once again, a district judge ordered the parties to either negotiate costs for fiscal year 2003–2004 and determine a self-executing formula for future years, or appear before an assembled panel of district judges for a hearing. This time, attempts to negotiate failed. A hearing was held in which the parties presented testimony, evidence, and argument on both the legal merits as well as the operational costs. In April 2004, the full panel of district judges, citing

I.C. § 1–2218 and their inherent power, ordered the Cities to pay a pro rata share for the cost of operating the magistrate's division. The Cities timely appealed.

## II.

### STANDARD OF REVIEW

The interpretation of a statute is a question of law over which this Court exercises free review. *State v. Hart,* 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). Interpretation of a statute begins with an examination of the statute's literal words. *State v. Burnight,* 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999). In other words, where statute is clear, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the Legislature. *Hart,* 135 at 829, 25 P.3d at 852.

## III.

### DISCUSSION

Idaho Code sections 1–2217 and 1–2218 address courthouse facilities as follows:

§ 1–2217. Facilities and equipment provided by *county.* Each county in the state shall provide suitable and adequate facilities for the magistrate's division of the district court, including the facilities and equipment necessary to make the space provided functional for its intended use, *and* shall provide for the staff personnel, supplies, and other expenses of the magistrate's division.

§ 1–2218. Facilities and equipment provided by *city.* Any city in the state shall, upon order of a majority of the district judges in the judicial district, provide suitable and adequate quarters for a magistrate's division of the district court, including the facilities and equipment necessary to make the space provided functional for its intended use, *and* shall provide for the staff personnel, supplies, and other ex-

penses of the magistrate's division. (Emphasis added).

Citing I.C § 1–2218, in their April 2004 decision, the district judges did not order the Cities to "provide suitable and adequate quarters for a magistrate's division," but instead ordered the Cities to reimburse the County for the Cities' use of the courthouse provided by the County: the Theron Ward Judicial Building. The County argues the district judges were authorized to order reimbursement because I.C. § 1–2217 and I.C. § 1–2218 should be read together. Under the County's view, I.C. § 1–2217 requires that the County provide and pay for a magistrate court facility, which it has done and will continue to do. However, under I.C. § 1–2218, upon order of a majority of the district judges, the Cities must either provide their own building *or* provide for use of the County facilities by compensating the County for their proportionate share. We are not persuaded.

These statutes clearly contemplate two distinct scenarios: section 2217 addresses a county's obligation to provide facilities *and* personnel, supplies, etc., whereas section 2218 speaks to a city's obligation to provide facilities *and* personnel, supplies, etc., upon order of the district judges. Idaho Code § 1–2218 does not require a city to provide facilities *or* other expenses. In other words, I.C. §§ 1–2217 and 2218 do not envision entwined or shared facilities and expenses. The entity which provides the building also provides the expenses associated with operating it. Thus, the district judges only had the authority to order the Cities to provide courthouse facilities. While it may seem inefficient to order each of the Cities to provide their own building, instead of ordering each City to contribute cash to the County to pay

its proportionate share, that does not justify ignoring the plain wording of the statute. An amendment to the statutes to provide greater efficiency is left to the legislature, not the courts. Idaho Code section 1–2218 simply does not include district judges ordering the Cities to put up the money for the operations of a courthouse provided by the County. Until the statute is amended to direct otherwise, the current statute means what it says: District judges have the option to order the Cities to "provide suitable and adequate quarters for a magistrate's division;" once the district judges decide not to order the Cities to provide facilities, their authority over the matter is at an end.

Also, requiring reimbursement in lieu of facilities ignores any right of a city to make decisions regarding the facilities it must provide if ordered by the district judges. While I.C. § 1–2218 empowers district judges to order "suitable and adequate quarters," beyond that minimum standard, the legislature has given cities the discretion to decide how they want to go about providing such quarters. A city may wish to utilize existing facilities or build a new structure, or it may prefer a certain location for the facility. Granting district judges the authority to order a city to make a contribution to the county's courthouse effectively eliminates a city's options. Again, under the clear language of the statute, district judges are not given the authority to decide on the city's behalf how the city should comply with the statute.

Furthermore, any sharing of costs is accounted for in I.C. § 31–3201A, which, like I.C. §§ 1–2217 and 2218, makes a distinction between magistrate court facilities provided by a city and those provided by a county.[1]

---

1. Idaho Code section 31–3201A addresses court fees as follows:

The clerk of the district court ... shall charge, demand and receive the following fees ... (b) A fee of seventeen dollars and fifty cents ($17.50) shall be paid [by a person found guilty of certain offenses]. *If the magistrate court facilities are provided by the county,* five dollars ($5.00) of such fee shall be paid to the county treasurer for deposit in the district court fund of the county; and twelve dollars and fifty cents ($12.50) of such fee shall be paid to the county treasurer who shall pay such fees to the

state treasurer for deposit in accordance with subsection (p) of this section. *If the magistrate court facilities are provided by a city,* five dollars ($5.00) of such fee shall be paid to the city treasurer for deposit in the city general fund, two dollars and fifty cents ($2.50) of such fee shall be paid to the city treasurer for deposit in the city capital facilities fund for the construction, remodeling and support of magistrates court facilities ... (c) A fee of sixteen dollars and fifty cents ($16.50) shall be paid [by a person found to have committed certain offenses]. *If the mag-*

Under I.C. § 31–3201A, where a county provides the facilities, $5.00 of a court fee is paid to the county. If, however, a city provides the facilities, $5.00 of a court fee is paid to the city's general fund and $2.50 is deposited into that city's "capital facilities fund." Ordering reimbursement eliminates the distinction necessary for I.C. § 31–3201A to work. If a city is ordered to reimburse a county for its proportionate use, how is one to know which entity, under I.C. § 31–3201A, has "provided" the facility? By ordering the Cities to reimburse the County, the district judges impermissibly blurred the line between a facility provided by a county and one provided by a city.

In their decision, the district judges also relied on the inherent authority of the courts to provide for adequate and necessary facilities within which to transact court business. This Court recognized its inherent authority "to incur and order paid all such expenses as are *necessary* for the holding of court and the administration of the duties of courts of justice" in *Schmelzel v. Board of Com'rs of Ada County*, 16 Idaho 32, 35, 100 P. 106, 107 (1909) (emphasis added). The Schmelzel Court rejected jurors' claims to reimbursement for haircut and shaving expenses incurred while sequestered because those expenses were not "necessary" to the administration of justice and were not the result of jury service. In this case, there has been no showing a payment of cash by the Cities is necessary for the administration of justice. In fact, a facility is currently in use by the Cities—the Theron Ward Judicial Building; there has been no finding that the court system must somehow be "repaired" by a cash payment.

In interpreting I.C. § 1–2218, the district judges also relied on the 1971 reforms to the judicial system in Idaho which made "the courts . . . a unified and integrated system." Because these reforms were intended to re-place the "patchwork quilt of local courts" with one efficient, unified court system, the district judges reasoned it would frustrate those reforms if there were multiple courthouses sprinkled throughout the state. It is true that as a part of these reforms, the magistrate's division of the district court was created, replacing the prior system of justices of the peace, probate courts and municipal judges. There is no question that Idaho judges are now a part of a single, unified court system, consisting of magistrate judges, district judges, Court of Appeals judges and Supreme Court justices. That has nothing to do, however, with providing the facilities in which those judges are chambered. As a part of court reform, I.C. § 1–2217 and 2218 were adopted and clearly provide that the counties and cities will thereafter have the responsibility to provide facilities to house the courts. The fact that judges may have to travel to different facilities to handle state, county and city matters is simply a product of the legislature's decision to have counties and cities provide facilities and operations; it has no impact on the fact that all judges are now part of a single, unified system.

Based on our decision, we need not address the other arguments raised by the County.

### IV.

### CONCLUSION

Because the district judges were without authority to order the Cities to reimburse the County for their use of the magistrate's division, the decision of the district judges is reversed. The Cities are awarded costs on appeal.

Justice KIDWELL, Pro Tem, and Judge SCHILLING, Pro Tem concur.

---

istrate court facilities are provided by the county, five dollars ($5.00) of such fee shall be paid to the county treasurer for deposit in the district court fund of the county; and eleven dollars and fifty cents ($11.50) of such fee shall be paid to the county treasurer, who shall pay such fees to the state treasurer for deposit in accordance with subsection (p) of this section. *If the magistrate court facilities are provided by*

a city, five dollars ($5.00) of such fee shall be paid to the city treasurer for deposit in the city general fund, two dollars and fifty cents ($2.50) of such fee shall be paid to the city treasurer for deposit in the city capital facilities fund for the construction, remodeling and support of magistrate court facilities . . .
I.C. 31–3201A (b), (c) (emphasis added).

Chief Justice SCHROEDER dissenting.

Nostalgia is great for classic movies, the golden oldies of music, and the fashions of bygone eras. It is unsuitable for the administration of the public's business. The progress of the court reform movement that glimmered in the 1950's, surged forward in the 1960's, and matured to reality in 1971, suffers its first major setback by the decision of the Court. Being the sole survivor in the judiciary from pre-reform days and having suffered through an unsuccessful experiment with the system at issue, the decision of the majority causes a profound sense of loss. The legislative foresight leading to court reform has been frustrated. The public's right to a safe, economically efficient system free from provincial influence has been impaired. The result is not driven by legislative mandate. It ignores the sad lessons of history and a common sense reading of the applicable statute.

## I.

### THE DISTRICT JUDGES HAVE THE AUTHORITY TO ORDER THE CITIES TO REIMBURSE THE COUNTY PURSUANT TO IDAHO CODE SECTION 1–2218

#### A. Standard of Review.

The interpretation of a statute is a question of law over which appellate courts in Idaho exercise free review. *State v. Maidwell*, 137 Idaho 424, 426, 50 P.3d 439, 441 (2002). Interpretation of a statute begins with an examination of the statute's literal words. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999). Where a statute is unambiguous, statutory construction is unnecessary and courts are free to apply the plain meaning. *Martin v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 244, 246, 61 P.3d 601, 603 (2002). Ambiguity is not established merely because the parties present differing interpretations to the court. *Rim View Trout Co. v. Higginson*, 121 Idaho 819, 823,

828 P.2d 848, 852 (1992). In the case of ambiguous language, when the Court must engage in statutory construction, it has the duty to ascertain the legislative intent and give effect to that intent. *Rhode*, 133 Idaho at 462, 988 P.2d at 688. To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* Courts must construe a statute "under the assumption that the legislature knew of all legal precedent and other statutes in existence at the time the statute was passed." *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 126 Idaho 145, 150, 879 P.2d 1078, 1083 (1994). Finally, Idaho has recognized the rule of *expressio unius est exclusio alterius*—"where a constitution or statute specifies certain things, the designation of such things excludes all others." *Local 1494 of the Int'l Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978).

#### B. The Statutes.

Idaho Code § 1–2217 and § 1–2218 provide:

1–2217. Facilities And Equipment Provided by County.—Each county in the state shall provide suitable and adequate quarters for the magistrate's division of the district court, including the facilities and equipment necessary to make the space provided functional for its intended use, and shall provide for the staff personnel, supplies, and other expenses of the magistrate's division.

1–2218. Facilities And Equipment Provided by City.—Any city in the state shall, upon order of a majority of the district judges in the judicial district, provide suitable and adequate quarters for a magistrate's division of the district court, including the facilities and equipment necessary to make the space provided functional for its intended use, and shall provide for the staff personnel, supplies, and other expenses of the magistrate's division.

The Cities argue that the clear meaning of these statutes is: (1) pursuant to I.C. § 1–

2217, if the magistrate facility is a county facility, the county is to provide for its funding; and (2) pursuant to I.C. § 1–2218, if a majority of the District Judges order a city to provide its own city facility, then that city is to provide for its own "brick and mortar" funding. The County argues that the clear meaning of the statutes is: (1) pursuant to I.C. § 1–2217, the County must provide and pay for a magistrate facility, which it has done, and will do; *but* (2) pursuant to I.C. § 1–2218, upon order of the majority of the District Judges, the Cities must either provide for their own "brick and mortar" facilities *or* provide for use of the County facilities by way of compensating the County for their proportionate share. In support of their interpretations both the Cities and the County cite to I.C. § 31–3201A, which provides:

31–3201A. Court fees. The clerk of the district court . . . shall charge, demand and receive the following fees . . .

(b) A fee of seventeen dollars and fifty cents ($17.50) shall be paid, but not in advance, by each person found guilty of any felony or misdemeanor, except when the court orders such fee waived because the person is indigent and unable to pay such fee. **If the magistrate court facilities are provided by the county, five dollars ($5.00) of such fee shall be paid to the county treasurer for deposit in the district court fund of the county;** and twelve dollars and fifty cents ($12.50) of such fee shall be paid to the county treasurer who shall pay such fees to the state treasurer for deposit in accordance with subsection (p) of this section. **If the magistrate court facilities are provided by a city, five dollars ($5.00) of such fee shall be paid to the city treasurer for deposit in the city general fund, two dollars and fifty cents ($2.50) of such fee shall be paid to the city treasurer for deposit in the city capital facilities fund for the construction, remodeling and support of magistrates court facilities** . . .

(c) A fee of sixteen dollars and fifty cents ($16.50) shall be paid, but not in advance, by each person found to have committed an infraction or any minor traffic, conservation or ordinance violation; provided that the judge or magistrate may in his or her discretion consolidate separate non-moving traffic offenses into one (1) offense for purposes of assessing such fee. **If the magistrate court facilities are provided by the county, five dollars ($5.00) of such fee shall be paid to the county treasurer for deposit in the district court fund of the county;** and eleven dollars and fifty cents ($11.50) of such fee shall be paid to the county treasurer, who shall pay such fees to the state treasurer for deposit in accordance with subsection (p) of this section. **If the magistrate court facilities are provided by a.city, five dollars ($5.00) of such fee shall be paid to the city treasurer for deposit in the city general fund, two dollars and fifty cents ($2.50) of such fee shall be paid to the city treasurer for deposit in the city capital facilities fund for the construction, remodeling and support of magistrate court facilities** . . .

(Emphasis added). The Cities interpret this statute as containing the complete funding scheme and source of support for the "bricks and mortar" of a county facility, or alternatively, for the "bricks and mortar" of a city facility—if such city facility had been ordered by the majority of the District Judges. The County agrees with the District Judges that the fee allocations found in I.C. § 31–3201A were not intended to be a comprehensive and the sole source of support for magistrate facilities, and therefore, the District Judges were within their authority to order the Cities to reimburse the County for use of the magistrate facility.

Pivotal to the interpretations of I.C. § 1–2217 and § 1–2218 is whether to "provide" means to actually provide for *only* the expenses contained within one's own concrete "brick and mortar" facilities, or does "provide" translate into monetary support for one's proportionate use of another's facilities? As "[t]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover," it is best to turn, as the District Judges did, to the legislative intent and history behind I.C. § 1–2217 and

404

§ 1–2218. *Matter of Permit No. 36–7200 in Name of Idaho Dept. of Parks,* 121 Idaho 819, 824, 828 P.2d 848, 853 (1992).

The District Judges noted that § 1–2217 and § 1–2218 were part of the 1971 reforms to the judicial system to make "the courts ... a unified and integrated system" as provided for in Article V, § 2 of the Idaho Constitution. In 1969 the Idaho Legislature created a body known as the "Magistrate Division" of the District Court, which went into effect in 1971. 1969 Idaho Sess. Laws, Ch. 104, §§ 1–17, pp. 354–60. This body replaced a "patchwork quilt" of local courts which were disjointed in their efforts to administer justice. Probate judges were elected on a partisan ballot with vacancies filled by appointment of county commissioners. Justices of the peace were appointed by the county. Municipal judges were appointed by the cities. In most instances these were part-time positions. Prior to the 1971 reforms, local courts were commonly held in "homes, barber shops, laundries, cafes, or wherever the justice of the peace could be found during judicial business hours, often times 'round the clock.' " Thomas Miller, *Justice For the Times,* ch. 6, p. 157 (1990). With court reform, the piecemeal system of courts with judges appointed by local authorities or election was replaced with a state system— the magistrate division as part of the district court. There were many factors underlying court reform. One was efficiency. Full-time magistrate judges commonly assumed greater caseloads and were required to travel throughout their district, and in some instances, statewide. To read I.C. § 1–2218, which was a part of the sweeping reform of 1971, as intending for the Cities to provide for magistrate facilities only if those facilities were the "bricks and mortar" of an individual city would frustrate the legislative intent to replace the patchwork quilt of local courts with one, efficient, unified, integrated system of justice. The District Judges have the statutory authority, found in I.C. § 1–2218, to order the Cities to provide for the facilities of the magistrate division by way of a staffed and equipped physical facility or by way of monetary reimbursement to the County for the Cities proportionate share of suitable and of adequate quarters, including the facilities and equipment necessary to make the space provided functional for its intended use, including staff personnel, supplies, and other expenses of the Magistrate's Division.

The most corrosive portion of the majority's opinion is the following:

Also, requiring reimbursement in lieu of facilities ignores any right of a city to make decisions regarding the facilities it must provide if ordered by the district judges. While I.C. § 1–2218 empowers district judges to order "suitable and adequate quarters," beyond that minimum standard, the legislature has given cities the discretion to decide how they want to go about providing such quarters. A city may wish to utilize existing facilities or build a new structure, or it may prefer a certain location for the facility. Granting district judges the authority to order a city to make a contribution to the county's courthouse effectively eliminates a city's options. Again, under the clear language of the statute, district judges are not given the authority to decide on the city's behalf how the city should comply with the statute.

Apparently the State Judges now work for the cities and are without any effective authority to establish meaningful standards to protect the public and assure that the public's business will be transacted in a safe, dignified atmosphere. Jury rooms, attorney conference rooms, metal detectors, proper security, trained staff available during all work hours—all are issues that the majority's opinion leaves open for debate with the cities having the weight of the majority's opinion resting with the cities. It is beyond reasonable debate to believe that the cities involved can provide an adequate courtroom, jury rooms, security, and staff for less than a reasonable contribution to an existing facility that is well staffed. Consequently, there will be turmoil (as one justice on this court has seen) with the cities attempting to do the job on the cheap. A vulnerable person entering the Twin Falls County Court Courthouse (Theron Ward Judicial Building) does so with the knowledge that he or she will be safe because adequate security exists. The likelihood of comparable safety existing in any

city facility is questionable—probably not really debatable. It won't be provided. Cracker box courtrooms, unsuitable jury rooms, inadequate security to protect the public, inadequate staff, inadequately trained staff—these are the stuff of elevating the cities to determine administration of the state court system. Don't expect the cities to rally and lobby the legislature to provide more judges to ride the circuit from town to town and more money to pay the travel costs attendant to that inefficiency. The legislature already provided the proper mechanism for an effective, efficient court system. The judges in the Fifth District recognized that wisdom and understood the historical context of court reform. Reviving dinosaurs makes entertaining movies but poor justice systems.

## II.

### THE DISTRICT JUDGES DID NOT VIOLATE THE SEPARATION OF POWERS DOCTRINE IN ORDERING THE CITIES TO REIMBURSE THE COUNTY FOR THEIR PROPORTIONATE USE OF THE MAGISTRATE'S DIVISION

The Cities argue that the action of the District Judges violates the separation of powers doctrine, relying on *Idaho Sch. for Equal Educ. Opportunity v. State*, 140 Idaho 586, 97 P.3d 453 (2004), in which the Court found that HB 403 created a process in which the judiciary would have to not only determine the amount of an "educational necessity levy," but also impose it upon the taxpayers of the school district in order to raise the necessary funds to correct the deficiencies. Since HB 403 assigned the power to tax to the judiciary, it improperly invaded the province of the Legislature, ignored the foundational principles of separation of powers, and hence, violated the Idaho Constitution.

Article II, § 1 of the Idaho Constitution provides for the separation of powers:

Departments of government: The powers of the government of this state are divided into three distinct departments, the legislative, executive, and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

Article V, § 2 of the Idaho Constitution provides for the judicial powers:

Judicial power—where vested. The judicial power of the state shall be vested in a court for the trial of impeachments, a Supreme Court, district courts, and such other courts inferior to the Supreme Court as established by the legislature. The courts shall constitute a unified and integrated judicial system for administration and supervision by the Supreme Court. The jurisdiction of such inferior courts shall be as prescribed by the legislature. Until provided by law, no changes shall be made in the jurisdiction or in the manner of the selection of judges of existing inferior courts.

Article V, § 13 of the Idaho Constitution provides for the role of the legislature as it concerns the courts:

Power of legislature respecting courts. The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution, provided, however, that the legislature can provide mandatory minimum sentences for any crimes, and any sentence imposed shall be not less than the mandatory minimum sentence so provided. Any mandatory minimum sentence so imposed shall not be reduced.

"Just as Article II of the Idaho Constitution prohibits the legislature from usurping powers properly belonging the judicial department, so does that provision prohibit the judiciary from improperly invading the province of the Legislature." *In re SRBA Case*

*No. 39576*, 128 Idaho 246, 255, 912 P.2d 614, 623 (1995). The courts have the authority to interpret legislation, but if law, so interpreted, is to be changed, that is a legislative, not a judicial function. *Powers v. Canyon County*, 108 Idaho 967, 703 P.2d 1342 (citing *Idaho Gold Dredging Co. v. Balderston*, 58 Idaho 692, 78 P.2d 105 (1938); *In Re Speer*, 53 Idaho 293, 300, 23 P.2d 239, 241 (1933)). The only exception to the separation of powers doctrine occurs where the exercise of another branch's power is expressly directed or permitted by the constitution. *Estep v. Comm'rs of Boundary County*, 122 Idaho 345, 834 P.2d 862 (1992).

In *Idaho Sch. for Equal Educ. Opportunity*, 140 Idaho 586, 595, 97 P.3d 453, 462 (2004), the separation of powers doctrine was found to be violated where "the courts are drawn into a protracted and detailed process of investigation and evaluation as to the conditions of schools and their deficiencies, and . . . called upon, not just to enforce a levy already established, but to be the original decision maker as to how much that levy should be according to its own investigation." In *Idaho Schools*, this Court discussed how HB 403 made the courts an integral part of the legislation creating the levy, making the courts the originator of a levy process:

> HB 403 . . . creates a legislative process in which taxing authority is given directly to a separate branch of government-the judiciary-whose powers and purposes were not meant to involve the taxation of Idaho citizens. It is one thing for the courts to direct a governmental entity to carry out its legislatively assigned duty to tax; it is quite another for the court itself to impose the tax.

*Id.* at 597, 97 P.3d at 464.

Contrary to Cities' argument, there is no legislative process involved in the District Judges' order to the Cities to provide for suitable and adequate quarters pursuant to I.C. § 1–2218 that would give rise to a separation of powers violation. The District Judges did not engage in a process of investigation and evaluation of the condition of the magistrate division. They considered the evidence of what the costs were to run the magistrate division as presented to them.

Acting in accordance with Article V, § 2 to have "a unified and integrated judicial system" and within their statutorily delegated authority in I.C. § 1–2218, the District Judges interpreted the laws before them, considered the evidence presented as to what it cost for staffing and equipping suitable and adequate quarters for the operation of the Magistrate's Division and then simply ordered the city to pay for the proportionate share they already used. There was no separation of powers violation by the District Judges in their interpretation of the laws before them and in their consideration of evidence admitted for their consideration.

## III.

## THE REIMBURSEMENT AND ALLOCATION FORMULA FOR THE COSTS OF THE MAGISTRATE'S DIVISION DOES NOT CONSTITUTE A DOUBLE TAXATION IN VIOLATION OF ARTICLE VII § 5 OF THE IDAHO CONSTITUTION

The Cities argue that requiring them to make payments to the County for the Magistrate's Division is a double taxation.

Article VII, § 5 of the Idaho Constitution provides:

> § 5. Taxes to be uniform—Exemptions.—All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: provided, that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing exemptions provided by the laws of the territory, shall continue until changed by the legislature of the state: provided further, that duplicate taxation of property for the same purpose during the same year, is hereby prohibited.

This Court interpreted Article VII, § 5 of the Idaho Constitution in *Humbird Lumber Co. v. Kootenai County*, 10 Idaho 490, 498, 79

P. 396 (1904): "The prohibition contained in that section against duplicate taxation was undoubtedly directed against the taxing of the property twice during the same year for the same purpose, while other like and similar property is taxed only once during the same period for the same purpose...." However, providing for *city* magistrate facilities for city cases is not the same purpose as providing for *county* magistrate facilities for county cases. There is no double taxation.

The Cities have failed to state how providing for the county and city cases has the same purpose. If anything, the Cities have based their argument on showing how providing for city versus county cases has a different purpose. As the Cities have stated: "[T]he plain meaning of the statute and accepted rules of statutory construction support the view that I.C. § 1–2218 does not permit the District Judges to order the Cities to reimburse the County for expenditures [the County] incurs to meet [the County's] legal obligation to provide magistrate court facilities and equipment under I.C. § 1–2217." However, the District Judges and the County are not directing the Cities to pay for the County's expenses. The District Judges were clear in ordering the Cities to pay for only "the actual level of usage by each [city]." The District Judges have ordered the Cities to contribute to a purpose different from that of the County—the Cities' contribution is to be only for that of their own actual expenses, which are additional, and therefore different from those of the County. No double taxation would occur.

Justice JONES concurs in the dissent.