**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 35432**

IN RE: FACILITIES AND EQUIPMENT )
PROVIDED BY THE CITY OF BOISE. )
------------------------------------------------------------- )
CITY OF BOISE, )
)                    **Boise, May 2009 Term**
)
   Petitioner-Appellant, )
)                    **2009 Opinion No. 110**
)
v. )
)                    **Filed: August 25, 2009**
)
ADA COUNTY and BOARD OF ADA )
COUNTY COMMISSIONERS, )                **Stephen W. Kenyon, Clerk**
)
   Respondents. )
)

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Judges of the Fourth Judicial District Sitting *en banc*.

The *en banc* panel's decision is <u>affirmed</u>.

Boise City Attorney's Office, Boise, and Cooper & Larsen, Pocatello, for appellant. Gary L. Cooper argued.

Ada County Prosecuting Attorney's Office, Boise, for respondent. Sherry A. Morgan argued.

_____

J. JONES, Justice

The City of Boise (the City or Boise City) appeals a decision by the district judges of the Fourth Judicial District denying the City's petition to vacate an order requiring it to provide suitable and adequate quarters for a magistrate's division of the district court (1980 Order or Order). We affirm.

**I.**

In 1969 the Idaho Legislature enacted several pieces of court reform legislation. *See* 1969 Idaho Sess. Laws chs. 100-28, pp. 344-95. Among other things, the legislation established the magistrate's division of the district court. *See* I.C. § 1-2201. In doing so, the legislation eliminated various lower courts that existed prior to the law, including probate courts, police

1

courts, and justice of the peace courts, and combined their functions into a single magistrate's division. *See* I.C. § 1-103. Under the restructured court system, counties are responsible for providing quarters, facilities, equipment, staff, and supplies for the magistrate's division.[1] *See* I.C. § 1-2217. Upon order of a majority of district judges in a judicial district, however, a city may be made responsible for providing quarters, facilities, equipment, staff, and supplies for a magistrate's division of the district court. *See* I.C. § 1-2218. Idaho Code sections 1-2217 and 1-2218, the provisions establishing this scheme, provide:

> § 1-2217. Facilities and equipment provided by county
>
> Each county in the state shall provide suitable and adequate quarters for the magistrate's division of the district court, including the facilities and equipment necessary to make the space provided functional for its intended use, and shall provide for the staff personnel, supplies, and other expenses of the magistrate's division.
>
> § 1-2218. Facilities and equipment provided by city
>
> Any city in the state shall, upon order of a majority of the district judges in the judicial district, provide suitable and adequate quarters for a magistrate's division of the district court, including the facilities and equipment necessary to make the space provided functional for its intended use, and shall provide for the staff personnel, supplies, and other expenses of the magistrate's division.

The costs incurred by a county or a city in providing facilities for the magistrate's division are offset through the apportionment of court-imposed fees. Idaho Code section 31-3201A establishes a schedule of fees to be imposed on individuals found guilty of felony, misdemeanor, and infraction offenses. *Id.* Pursuant to the statute, fees collected for such convictions are apportioned to either the county or the city, depending on which entity provided the court facilities. The statute provides:

> The clerk of the district court . . . shall charge, demand and receive the following fees for services rendered by him in discharging the duties imposed upon him by law:
>
> . . .
>
> (b) A fee of seventeen dollars and fifty cents ($17.50) shall be paid, but not in advance, by each person found guilty of any felony or misdemeanor, except when the court orders such fee waived because the person is indigent and unable to pay such fee. *If the magistrate court facilities are provided by the county, five dollars*

---

[1] The State of Idaho, however, has the responsibility of paying magistrate judges' salaries. *See* I.C. § 1-2219.

2

*($5.00) of such fee shall be paid to the county treasurer for deposit in the district court fund of the county*; and twelve dollars and fifty cents ($12.50) of such fee shall be paid to the county treasurer who shall pay such fees to the state treasurer for deposit in accordance with subsection (p) of this section. *If the magistrate court facilities are provided by a city, five dollars ($5.00) of such fee shall be paid to the city treasurer for deposit in the city general fund, two dollars and fifty cents ($2.50) of such fee shall be paid to the city treasurer for deposit in the city capital facilities fund for the construction, remodeling and support of magistrate[] court facilities*, and ten dollars ($10.00) of such fee shall be paid to the county treasurer who shall pay such fees to the state treasurer for deposit in accordance with subsection (p) of this section.

(c) A fee of sixteen dollars and fifty cents ($16.50) shall be paid, but not in advance, by each person found to have committed an infraction or any minor traffic, conservation or ordinance violation . . . . *If the magistrate court facilities are provided by the county, five dollars ($5.00) of such fee shall be paid to the county treasurer for deposit in the district court fund of the county*; and eleven dollars and fifty cents ($11.50) of such fee shall be paid to the county treasurer, who shall pay such fees to the state treasurer for deposit in accordance with subsection (p) of this section. *If the magistrate court facilities are provided by a city, five dollars ($5.00) of such fee shall be paid to the city treasurer for deposit in the city general fund, two dollars and fifty cents ($2.50) of such fee shall be paid to the city treasurer for deposit in the city capital facilities fund for the construction, remodeling and support of magistrate court facilities*, and nine dollars ($9.00) of such fee shall be paid to the county treasurer who shall pay such fees to the state treasurer for deposit in accordance with subsection (p) of this section.

I.C. § 31-3201A(b) & (c) (emphasis added).

On the day the court reform legislation took effect, January 11, 1971, the district judges of the Fourth Judicial District entered an order requiring Boise City to provide a magistrate's division of the district court. The order stated:

It is hereby Ordered that, pursuant to Section 1-2218, Idaho Code, the City of Boise, Idaho, shall provide suitable and adequate quarters for two magistrates of the Fourth District Court Magistrates Division, including two courtrooms with related facilities and equipment necessary to make the space provided functional for its intended use, and the necessary supplies and non-judicial staff personnel to operate said courts.

To comply with the order, Boise City established magistrate court facilities in an old fire station on Kootenai Street in Boise. The facility housed support personnel, equipment, and supplies for two magistrate judges and was used to process misdemeanor and traffic violations. All other magistrate's division functions were housed in facilities provided by Ada County in the Ada

County Courthouse.[2]  With the exception of the magistrate judges, all workers at the Kootenai Street facility were Boise City employees.

The City's magistrate facilities remained on Kootenai Street until a new facility was opened in August 1981.  Construction of the new facility was prompted by an order the district judges of the Fourth Judicial District issued on October 9, 1980.  The 1980 Order provided:

> Pursuant to the authority of section 1-2218, Idaho Code, the City of Boise City, Idaho, be, and
> HEREBY IS ORDERED to provide suitable and adequate quarters for a Magistrate's Division of the District Court, including the facilities and equipment necessary to make the space provided functional for its intended use, and shall provide for the staff, personnel, supplies, and other expenses of the Magistrate's Division.

Boise City's new facility – the Barrister facility – consisted of five courtrooms and various equipment, staff, and supplies.  By 1983, all misdemeanor and infraction cases filed by Boise City, Ada County, the Idaho State Police, Idaho Fish and Game, and the cities of Meridian, Garden City, Kuna, and Eagle were processed at the Barrister facility.[3]  Felony arraignments were also conducted there.  Pursuant to Idaho Code section 31-3201A, Boise City received the statutory fees for all convictions processed at the Barrister facility.

Boise City initially paid for all of the personnel, equipment, and supplies at the Barrister facility.  Over time, however, Ada County began to supplement the Barrister personnel with its own employees.[4]  In addition, the Fourth Judicial District Trial Court Administrator began seeking voluntary contributions from other cities within Ada County to help fund the Barrister facility.  When the mayors of two of those cities – namely, Garden City and Meridian – declined to contribute, Ada County and Boise City filed a joint petition asking the district judges of the Fourth Judicial District to order contribution.  On August 12, 1994, the district judges granted the petition and entered an order requiring the cities of Garden City and Meridian to provide suitable and adequate quarters for a magistrate's division of the district court.  By the time proceedings in this matter were initiated in September 2007, neither Garden City nor Meridian had complied with the order.

---

[2] In 1974, however, the juvenile division of the magistrate court was moved to a facility on West Denton Street in Boise.  Juvenile proceedings continue to be conducted at this facility.

[3] The remaining functions of the magistrate division, with the exception of juvenile proceedings, continued to be conducted at the Ada County Courthouse.

[4] Ada County employed court clerks and a supervisor at the facility.

In 1998, Ada County began developing plans for a new Ada County Courthouse and Administration Building. The building was designed to house all Fourth District Court functions, except juvenile proceedings. Consequently, the building would eliminate the need for Boise City's Barrister facility.

In anticipation of completion of the new courthouse, Boise City and Ada County entered into a Memorandum of Agreement (MOA) on October 1, 1999. In addition to providing for the transfer of the City's Barrister employees to the County, the agreement outlined Boise City's continuing obligation to provide facilities, equipment, personnel, supplies, and expenses for a magistrate's division of the district court. Pursuant to the MOA, once the magistrate's division was consolidated in the new courthouse, the City would fulfill its obligations under the 1980 Order by reimbursing the County for its share of the magistrate's division's operational, equipment, and maintenance expenses. The Boise City Council approved the terms of the MOA in Resolution No. 15642. In doing so, the Council acknowledged that the City remained obligated under the 1980 Order and intended to fulfill its obligations through the MOA.

Construction of the new Ada County Courthouse and Administration Building was substantially completed in January 2002.[5] By February 2002, all of the functions of the magistrate's division, excluding only juvenile proceedings, were consolidated in the new facility. Since that time, the functions previously housed at the Barrister facility have remained in the new courthouse.

Once the magistrate's division was consolidated, Ada County began receiving all of the court fees authorized by Idaho Code section 31-3201A. After a series of negotiations, however, the County agreed to credit Boise City the $5.00 statutory fee for all misdemeanor and infraction cases filed by the City – thereby decreasing the amount the City was obligated to pay the County under the MOA. The County would continue to receive the $2.50 capital facilities fee for the City's filings.

Boise City continued making payments to the County pursuant to the MOA until September 2007. Since that time the City has maintained that, under this Court's decision in *Twin Falls County v. Cities of Twin Falls and Filer*, 143 Idaho 398, 146 P.3d 664 (2006), it is no longer obligated to provide facilities for a magistrate's division of the district court and,

---

[5] Boise City did not pay for any of the construction costs associated with the new courthouse and has no ownership interest in the facility.

therefore, is not required to reimburse the County for providing such facilities. In an effort to confirm its position, the City filed a petition asking the district judges of the Fourth Judicial District to set aside the 1980 Order. The County then filed a motion to intervene in the proceedings, which was granted over the City's objection.

On April 18, 2008, the panel of district judges[6] heard argument on Boise City's petition to set aside the 1980 Order. After the hearing, the panel issued a memorandum decision and order denying the City's petition. The panel reasoned that: (1) neither the consolidation of the magistrate's division nor this Court's decision in *Twin Falls County* relieved the City of its obligations under the 1980 Order; (2) there had not been a substantial change in circumstances that would justify rescinding the Order; and (3) the Order did not impose an unconstitutional tax on Boise City taxpayers. Based on these considerations, the panel concluded Boise City failed to "meet its burden in demonstrating that there is sufficient and good cause to set aside the October 9, 1980 Order."

Boise City now appeals the panel's decision denying its petition. The City argues that the panel should have vacated the Order because it is no longer legally or factually justifiable and it violates both the Idaho and United States Constitutions. Further, the City contends that the panel imposed an improper burden of proof and erroneously allowed the County to intervene in the proceedings. The County argues that the panel's decision was proper and requests an award of attorney fees on appeal.

## II.

On appeal we are presented with five issues, namely, whether: (1) the panel erred by allowing Ada County to intervene in the proceedings pertaining to the City's petition; (2) the panel erred by requiring Boise City to show "good and sufficient" cause for vacating the 1980 Order; (3) the panel's decision denying Boise City's petition was erroneous; (4) the 1980 Order and Idaho Code section 1-2218 impose an unconstitutional tax on Boise City taxpayers; and (5) Ada County is entitled to attorney fees on appeal.

---

[6] District Judge Mike Wetherell, a former Boise City councilman, did not participate on the panel, having recused himself.

**A.**

In granting the County's motion to intervene, the panel relied on Idaho Rule of Civil Procedure 24(a). That rule permits intervention as a matter of right when:

> the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede [the] applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Idaho R. Civ. P. 24(a). The panel reasoned that the rule authorized intervention because, by filing a petition, the City commenced a civil action in which intervention is permissible. Further, since the County would suffer adverse financial consequences if the Order was set aside and there was no evidence that the City could adequately represent the County's interests, the County was entitled to intervene.

The City argues that the panel erred in granting the County's motion to intervene. It contends that intervention is only permissible in a civil action, not in an administrative proceeding, which is what its petition initiated. In support of its argument, the City opines: (1) it did not file a complaint or lawsuit against any person or entity; (2) Idaho Code section 1-2218 is contained in the code chapter addressing the administration of courts and, therefore, does not contemplate litigation; (3) unlike in litigation, a panel of judges presides over decisions regarding section 1-2218 orders; and (4) the petition initiated a proceeding between the City and the district judges that did not involve Ada County.

The County argues that the panel did not err in granting its motion to intervene. According to the County, intervention was proper because its "interests would be impacted by an adverse decision,"[7] "there [was] no other party to represent [its] interests," there was no evidence that intervention harmed the City or changed the outcome of the proceedings, and its participation "allowed for a more complete, balanced and thorough review of the issues presented in [the] petition." Further, it maintains that the City's petition initiated an "action" under the Idaho Rules of Civil Procedure and, therefore, the City's attempt to characterize the proceedings as administrative in nature is unpersuasive.

---

[7] Specifically, the County asserts that if the Order was rescinded, it would assume sole responsibility for funding the entire Fourth Judicial District Magistrate's Division, thereby increasing its financial obligations by approximately $700,000.00 per year.

7

While this proceeding may bear some similarity to a civil action, we decline to categorize it as such. The County argues it is an action, having been commenced by the filing of the City's petition. However, the County overlooks the fact that the proceeding was commenced when the 1980 Order was entered. The City's petition sought to vacate the Order entered by the district judges. A proceeding commenced by a panel of district judges cannot properly be categorized as an action under the Idaho Rules of Civil Procedure. To do so would be to treat the judges as litigants, rather than disinterested decision-makers. It is thus clear that we are not dealing here with a civil action under the civil procedure rules.

Nor is this a typical administrative proceeding, as contended by the City. While a panel of judges may be carrying out duties relating to the administration of court business in determining whether to issue an order under section 1-2218, we are dealing here with a petition seeking to set aside an existing order under that section. A decision granting or denying a petition to set aside an existing order involves judicial decision-making and, as such, is not administrative in nature. *See* 43A C.J.S. *Injunctions* § 396 (2008).

We need not determine whether the proceeding fits neatly within the category of either a civil action or an administrative proceeding. By the enactment of section 1-2218, the Legislature vested the district judges of a judicial district with the authority to order cities to provide suitable and adequate quarters for a magistrate's division of the district court. The Legislature did not specify the procedures to be used in considering, issuing, modifying, or vacating such orders. However, the Legislature was obviously aware at the time that the courts possess inherent power to fashion suitable rules for carrying out their constitutional and statutory duties. Indeed, Idaho's Territorial Legislature enacted a provision memorializing the courts' power to fashion the procedures necessary to perform their duties, and that provision, in its pre-statehood language, is now codified as Idaho Code section 1-1622.

We have made it clear from time to time that the rule-making authority of the courts is not dependent upon legislative enactments. In *State v. Griffith*, 97 Idaho 52, 58, 539 P.2d 604, 610 (1975), we stated:

> While the legislature has authorized this Court to formulate rules of procedure, this Court has the inherent authority, made especially clear by the amended provisions of Article V, Section 2 of the Idaho Constitution, to make rules governing procedure in the lower courts of this state. *R.E.W. Construction Co. v. District Court of the Third Judicial District* [, 88 Idaho 426, 400 P.2d 390 (1965)]. The legislature need not repeal statutes made unnecessary by, or found

8

in conflict with, court reorganization and integration.  It is well settled in this state, as part of the rule-making power possessed by this Court, that the Court may by rule . . . make inapplicable procedural statutes which conflict with our present court system.

*See also J.I. Case Co. v. McDonald*, 76 Idaho 223, 230, 280 P.2d 1070, 1074 (1955) ("where [a] statute or rule does not prescribe the procedure, the common law or other appropriate method will be followed in the exercise of inherent judicial power").

As previously mentioned, the Legislature has recognized the courts' inherent power in this regard by enactment of section 1-1622.  That section provides:

When jurisdiction is, by this code, or by any other statute, conferred on a court or judicial officer all the means necessary to carry it into effect are also given; and in the exercise of the jurisdiction if the course of proceedings be not specially pointed out by this code, or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code.

I.C. § 1-1622.  In *Fox v. Flynn*, 27 Idaho 580, 588, 150 P. 44, 47 (1915), referring to section 3925 of Idaho's Revised Codes, which is identical to the present section 1-1622, the Court said:

It would seem that, when jurisdiction is conferred upon the district court by the constitution in all cases, both at law and in equity, there is also conferred, as an incident of such grant, the power to make the same effective by any suitable process or mode of procedure which may be adopted, and that the district court could avail itself of the method of procedure prescribed by the statutes for the inferior courts, or as provided by section 3925, Rev. Codes . . .

Thus, the panel had the requisite authority to employ a suitable process for determining whether to grant the County's request to intervene.

We now turn to the question of whether the panel properly allowed the County to intervene.  In allowing the intervention, the panel relied on Idaho Rule of Civil Procedure 24(a).  While we have indicated that this is not an action within the contemplation of the civil procedure rules, there is no reason why courts should not look to the procedural rules for guidance in circumstances such as these.  Rule 24(a) permits intervention as a matter of right when the applicant claims an interest relating to the transaction at issue and the applicant's ability to protect that interest may be impaired by the disposition.  That certainly is the case here.  The County had a substantial financial stake in maintaining the efficacy of the 1980 Order.  To deny

it the opportunity to appear and be heard would be repugnant of our concepts of fairness and due process.

Even aside from the procedural rules, the panel had the authority to grant the County's motion to intervene. Courts have the inherent power to grant intervention to persons who may be adversely affected by the outcome of a proceeding or when equitable principles otherwise require. *See* 67A C.J.S. *Parties* § 93 (2009). It is generally recognized that "courts [should] look with favor on intervention in a proper case, and . . . be liberal in permitting parties to intervene under the proper circumstances." *Id.* If there is any doubt as to whether intervention is appropriate, a motion to intervene should usually be granted. *Id.* These principles hold true in various forms of proceedings, not just those involving the litigation of claims between adverse parties. *See In re Change of Name of Davenport*, 641 N.W.2d 379, 383 (Neb. 2002) (holding that a father should be permitted to intervene in his child's name change proceeding under statute allowing intervention in litigation); *City of Chicago v. Zik*, 211 N.E.2d 545, 546 (Ill. App. Ct. 1965) (allowing intervention in a demolition proceeding).

Thus, under its inherent authority, as memorialized in section 1-1622, the panel was empowered to allow the County to intervene. Surely, allowing a county to intervene in a city's proceeding to set aside a section 1-2218 order is in accordance with the spirit of the Idaho Code.[8] *See In re the Petition of Idaho State Fed'n of Labor*, 75 Idaho 367, 370, 272 P.2d 707, 708 (1954) (relying on section 1-1622 "to adopt a suitable procedure which will furnish an opportunity for any interested person to appear at the hearing" where the governing statute provides no such process or procedure (quoting *Roche v. Superior Court*, 157 P. 830, 832 (Cal. Ct. App. 1916))). The Code vests counties with an interest in maintaining the efficacy of section 1-2218 orders. A decision relieving a city of its obligations under a section 1-2218 order has the effect of imposing those same obligations on the county. Because the Code vests counties with an interest in section 1-2218 orders, giving counties the opportunity to be heard in proceedings regarding the continuing validity of such orders conforms to the spirit of the Code. Therefore, the panel had the authority to allow the County to intervene in this proceeding and it properly exercised that authority.

---

[8] Section 1-1622 states that where the course of proceedings is not provided, "any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of [the Idaho Code]."

**B.**

In denying the City's petition, the panel concluded the City failed to meet its burden of "demonstrating that there is good and sufficient cause to set aside the October 9, 1980 Order." Relying on this Court's decision in *Noble v. Fisher*, 126 Idaho 885, 894 P.2d 118 (1995),[9] the panel reasoned the City was required to show there had been a substantial and material change of circumstances that would justify rescinding the 1980 Order.

On appeal, Boise City argues that the panel erred by requiring it to demonstrate "good and sufficient cause" for setting aside the 1980 Order. In support of this argument, the City points out that section 1-2218 does not impose a burden of proof on cities seeking relief from orders issued pursuant to that section. Accordingly, the City argues that, in deciding whether to set aside a section 1-2218 order, the burden is on the district judges "to analyze the condition of the existing magistrate facility and the need for the City to provide a separate magistrate facility." By imposing a different burden without notice, the City argues that the panel violated its right to due process.

The County, on the other hand, argues that the panel's use of the "good and sufficient cause" standard was appropriate. It maintains the City's assumption that it would not be required to meet a burden of proof was unreasonable.

Section 1-2218 does not establish any standards for the review of orders issued pursuant to that section. There are, however, well-established rules governing the review of a similar type of order which lend themselves to application in the current case. Although not the same in all respects, section 1-2218 orders are similar to permanent mandatory injunctions[10] in that they impose an affirmative, continuing obligation on cities to provide for a magistrate's division of the district court. Both types of orders have "prospective application subject to continuing supervision," "are open-ended in nature," and "concern[] a continuing situation." 42 AM. JUR. 2D *Injunctions* § 302 (2009). Accordingly, an examination of the standards governing review of injunctions is warranted.

---

[9] *Noble v. Fisher* was a child support modification case in which the Court held, based on Idaho Code section 32-709, that a support order may only be modified "upon a showing of a substantial and material change of circumstances." *Noble*, 126 Idaho at 888, 894 P.2d at 121.

[10] A mandatory injunction "orders an affirmative act or mandates a specified course of conduct." 43A C.J.S. *Injunctions* § 13 (2009).

11

As a general rule, a final order resulting in the imposition of an injunction will not be reconsidered except upon a showing of good and sufficient cause. *See* 43A C.J.S. *Injunctions* § 394 (2009); 42 AM. JUR. 2D *Injunctions* § 302 (2009). Good cause may be established by proving, by a preponderance of the evidence, that a change in circumstances has rendered the original injunction inequitable. 42 AM. JUR. 2D *Injunctions* § 306 (2009); *see also Pac. Rivers Council v. Thomas*, 936 F. Supp. 738, 742 (D. Idaho 1996). The changed circumstance may be one of either fact or law. *Pac. Rivers*, 936 F. Supp. at 742; 42 AM. JUR. 2D *Injunctions* § 306 (2009). In either case, the "change in circumstances must be sufficiently significant or substantial to make modification of the injunction just and equitable, or to make the injunction in its original form inequitable, no longer justified, or wrong, inequitable, or unjust." 42 AM. JUR. 2D *Injunctions* § 306 (2009). Under this standard, a court has broad discretion in deciding whether to grant a party's motion to modify or set aside an injunction. 43A C.J.S. *Injunctions* § 393 (2009); 42 AM. JUR. 2D *Injunctions* § 303 (2009). The party seeking to have an injunction modified or set aside bears the burden of proof. 43A C.J.S. *Injunctions* § 396 (2009); *see also First Sec. Bank, N.A. v. Stauffer,* 112 Idaho 133, 139, 730 P.2d 1053, 1059 (Ct. App. 1986) ("The party moving to have an order or judgment vacated or set aside bears the burden of proof.").

It becomes evident that there are at least three general principles governing the review of orders imposing continuing obligations. First, the party challenging the order bears the burden of proof. Second, to satisfy its burden, the moving party must demonstrate that the order is no longer justified, due to either a change in the law or a change in the factual circumstances. Third, the reviewing tribunal has broad discretion in deciding whether to grant or deny a party's motion to modify or set aside an existing order. The City has not presented any persuasive argument for exempting section 1-2218 orders from these general principles.

In light of these standards, the panel did not err by requiring the City to show good and sufficient cause for setting aside the 1980 Order. The panel correctly concluded that, as the moving party, the City carried the burden of proving that its petition should be granted. It is well-established that a party seeking to set aside an order has the burden of proving the order is no longer justified. *See First Sec. Bank,* 112 Idaho at 139, 730 P.2d at 1059. Therefore, it would be unreasonable to conclude, as the City suggests, that the Legislature's failure to specify a burden of proof in section 1-2218 relieved the City of its obligation to demonstrate why the 1980

12

Order should be set aside.[11]   The panel's decision to rely on the good and sufficient cause standard was also appropriate.  As discussed above, that standard is frequently implemented in proceedings to modify or set aside an existing order.  In fact, although the City now contests the panel's use of the standard, the arguments the City made below and continues to make on appeal indicate that it knew it carried the burden of demonstrating good and sufficient cause for setting aside the 1980 Order.[12]   The City's primary argument for setting aside the 1980 Order was, and continues to be, that there has been a substantial and material change of circumstances since the issuance of the Order.  For these reasons, the City's argument that the panel employed the incorrect burden of proof is unpersuasive.

## C.

In denying Boise City's petition, the en banc panel rejected the City's argument that the 1980 Order was no longer legally or factually justifiable.  First, the panel found unpersuasive the City's argument that this Court's decision in *Twin Falls County v. Cities of Twin Falls and Filer*, 143 Idaho 398, 146 P.3d 664 (2006), rendered the 1980 Order invalid.  The panel reasoned that *Twin Falls County* did not impact the validity of the 1980 Order because "there is nothing in the . . . Order which orders Boise City to pay a pro rata share for the cost of operating and maintaining the Ada County Courthouse."  Rather, the Order only required Boise City to "[p]rovide suitable and adequate quarters for a Magistrate's Division," "facilities and equipment" necessary to make the quarters functional, and the personnel, staff, supplies, and other expenses needed to operate the facility.  Because the 1980 Order did not require the City "to contribute to the costs of operating the Ada County Courthouse," it was permissible under *Twin Falls County*.

Next, the panel concluded that the Order was still factually justifiable.  It reasoned that, contrary to the City's assertions, the consolidation of the magistrate's division was not a material and substantial change in circumstances.  Because Boise City voluntarily chose to "fulfill its obligations under the . . . 1980 Order by allowing the Barrister courthouse functions to be transferred to the new Ada County Courthouse and by agreeing to pay for some of the costs of providing the Magistrate's Division of the District Court," it could not claim that the

---

[11] This is especially true since, other than requiring orders to be issued by a majority of district judges in a judicial district, section 1-2218 contains no procedural requirements for proceedings initiated pursuant to that section.  Thus, section 1-1622 gives the district judges the authority to adopt "any suitable process or mode of proceeding . . . which may appear most conformable to the spirit of [the] code."  I.C. § 1-1622.

[12] For this reason, the City's contention that it did not have notice of the standard is unpersuasive.

consolidation relieved it of its obligations under the Order. Further, since Boise City's misdemeanor and infraction filings continued to account for the majority of such filings in Ada County, the Order was still justified.[13] On appeal, Boise City challenges the panel's conclusion that the 1980 Order is still legally and factually justifiable.

The City argues the panel erred by failing to consider circumstances that have changed since the issuance of the 1980 Order – namely, the impact of this Court's decision in *Twin Falls County*, the existence of the new Ada County Courthouse, and the fact that the County now receives the court fees authorized by Idaho Code section 31-3201A. The County argues the panel correctly concluded that the 1980 Order is still justified. It contends that none of the City's proffered reasons warrant rescinding the Order.

**1.**

First, the City argues that the panel failed to recognize the impact of our decision in *Twin Falls County v. Cities of Twin Falls and Filer*, 143 Idaho 398, 146 P.3d 664 (2006). It contends that, under *Twin Falls County*, when a county provides the building that houses the entire magistrate's division "there is no legal basis or justification for an Idaho Code § 1-2218 [o]rder requiring the cities in such a county to provide magistrate facilities." Thus, Ada County's decision to provide the building that houses the entire magistrate's division of the Fourth Judicial District obviated the need for the City to provide similar facilities. Additionally, the City argues that *Twin Falls County* precludes cities from contracting with a county to satisfy their obligations under section 1-2218 orders. It bases this argument on the statement in *Twin Falls County* that Idaho Code sections 1-2217 and 1-2218 "do not envision entwined or shared facilities and expenses." *Twin Falls County*, 143 Idaho at 400, 146 P.3d at 666.

The County argues that the City has misconstrued the holding in *Twin Falls County*. It contends that *Twin Falls County* only prohibits ordering cities to reimburse a county for their use of the county's courthouse facilities. According to the County, nothing in *Twin Falls County* or Idaho Code section 1-2218 precludes a city from voluntarily contracting with a county to fulfill its obligations under a section 1-2218 order. Therefore, the County contends Boise City's decision to fulfill its obligations under the 1980 Order by reimbursing the County for housing the functions of the magistrate's division does not justify vacating the Order.

---

[13] For the fiscal year 2007, Boise City's misdemeanor and infraction filings accounted for more than 51% of all such filings in Ada County. This figure is consistent with the City's filings for the past several years.

Contrary to the City's assertions, *Twin Falls County* only precludes a panel of district judges from ordering a city to reimburse a county for its use of county-owned facilities. *See Twin Falls County*, 143 Idaho at 400, 146 P.3d at 666. In that case, a county courthouse facility was used to house the district court and the entire magistrate's division thereof. *Id*. at 399, 146 P.3d at 665. The county provided the equipment, personnel, supplies and expenses necessary to operate the entire facility. *Id*. Several cities within the county, however, reimbursed the county for their proportionate shares of the cost of maintaining the magistrate's division. *Id*. When efforts to renegotiate the amount the cities paid the county failed, a majority of the district judges issued an order pursuant to section 1-2218 requiring the cities "to pay a pro rata share for the cost of operating the magistrate's division." *Id*. The cities appealed to this Court, which reversed the judges' order on a 3-2 vote after concluding that it exceeded their statutory authority. The Court reasoned that section 1-2218 did not authorize the district judges to order the cities to reimburse the county for their use of the county courthouse. *Id*. at 400, 146 P.3d at 666. Rather, the statute only permitted the judges to order the cities to "provide suitable and adequate quarters for a magistrate's division." *Id*. Because the order did not impose an obligation on the cities to provide suitable and adequate quarters for a magistrate's division, but instead required the cities to compensate the county for their use of county facilities, it exceeded the judges' statutory authority and was invalid. *Id*.

The 1980 Order does not run afoul of the holding in *Twin Falls County*. Unlike the order in *Twin Falls County*, the 1980 Order only requires the City to provide suitable and adequate quarters for a magistrate's division – it does not require the City to reimburse the County for its use of the County's facilities. Boise City's voluntary decision to begin fulfilling its obligations under the Order by contracting with Ada County is not the equivalent of the panel ordering it to do so. Because the Order itself does not require the City to reimburse the County for its use of the County's courthouse, the Order does not exceed the panel's statutory authority.

Nothing in *Twin Falls County* precludes a city from fulfilling its obligations under a section 1-2218 order by contracting with a county to house a division of the magistrate court. *See Twin Falls County*, 143 Idaho at 400, 146 P.3d at 666. The problem in *Twin Falls County* was not the reimbursement scheme itself, but the fact that it was ordered by the district judges. *Id.* (stating that the district judges did not have "the authority to decide on the city's behalf how the city should comply with the statute"). The decision simply rejected the proposition that,

when read together, sections 1-2217 and 1-2218 authorize a panel of district judges to order cities to "either provide their own building *or* provide for use of . . . [c]ounty facilities by compensating the [c]ounty for their proportionate share." *Id.* Although there is language in *Twin Falls County* that, when read in isolation, may support the proposition that it is never permissible for cities and counties to share facilities, the statements were made in reference to the district judges' authority to order mandatory contributions for shared facilities.[14] *See id.* at 400-01, 146 P.3d at 666-67. Moreover, the decision explicitly acknowledged a city's right "to make decisions regarding the facilities it must provide if ordered by the district judges." *Id.* at 400, 146 P.3d at 666.

Further, the language of section 1-2218 makes clear that cities are free to decide how they will comply with orders issued pursuant to that section. The only mandatory obligations the statute imposes are that the quarters be "suitable and adequate," consist of the facilities and equipment necessary to make the space provided functional for its intended use, and include the staff, personnel, supplies, and other expenses of a magistrate's division. As such, once the district judges order a city to provide a magistrate's division, the discretion regarding how to comply with the order lies with the city.

Here, the City's decision to fulfill its obligations under the 1980 Order by compensating the County for housing the magistrate functions previously located at the Barrister facility was permissible under both section 1-2218 and *Twin Falls County*. Under those authorities, the City

---

[14] Specifically, the decision states:

> These statutes clearly contemplate two distinct scenarios: section 2217 addresses a county's obligation to provide facilities *and* personnel, supplies, etc., whereas section 2218 speaks to a city's obligation to provide facilities *and* personnel, supplies, etc., upon order of the district judges. Idaho Code § 1-2218 does not require a city to provide facilities *or* other expenses. In other words, I.C. §§ 1-2217 and 2218 do not envision entwined or shared facilities and expenses. The entity which provides the building also provides the expenses associated with operating it. *Thus, the district judges only had the authority to order the Cities to provide courthouse facilities.*
> . . .
> Furthermore, any sharing of costs is accounted for in I.C. § 31-3201A, which, like I.C. §§ 1-2217 and 2218, makes a distinction between magistrate court facilities provided by a city and those provided by a county. . . . *Ordering reimbursement eliminates the distinction necessary for I.C. § 31-3201A to work.* If a city is *ordered* to reimburse a county for its proportionate use, how is one to know which entity, under I.C. § 31-3201A, has "provided" the facility? *By ordering the Cities to reimburse the County, the district judges impermissibly blurred the line between a facility provided by a county and one provided by a city.*

*Twin Falls County*, 143 Idaho at 400-01, 146 P.3d at 666-67 (emphasis added).

has the discretion to determine the manner in which it will fulfill the obligations imposed upon it by the Order. After several years of providing a separate facility, Boise City chose to begin fulfilling its obligations by contracting with Ada County.[15] Thus, unlike the cities in *Twin Falls County*, Boise City voluntarily decided to fulfill its obligations through a reimbursement arrangement – it was not ordered to do so by the district judges.[16]

The City's intent to fulfill its obligations by reimbursing Ada County is evidenced by the terms of the MOA.[17] In the MOA, the City acknowledged that the 1980 Order obligated it "to provide suitable and adequate quarters for a Magistrate's Division of the District Court, including facilities, equipment, staff, personnel, supplies and other expenses necessary to process and support infractions and misdemeanors occurring within its city limits." To satisfy these obligations, the City agreed to "provide funding for maintenance and operating costs and for equipment as identified in the budget agreed upon annually" and to "reimburse the County for the transferred employees." In return, the County agreed "to accept the . . . payments in full and complete satisfaction of the City's obligations to provide facilities, equipment, staff, personnel, supplies and other expenses" for a magistrate's division. The City would also "continue to receive its distribution of fines and court costs under the statutory formulae." These terms were to "remain in full force and effect until any amendment is agreed to by both parties." Accordingly, the City continued making payments to the County even after the magistrate's division was consolidated.

The theme underlying the City's contention that it is no longer obligated to contribute to the functioning of the magistrate's division is that, with the construction of the new courthouse,

---

[15] The City contends that its decision to contract with the County was not voluntary. It maintains that, although the County did not force it to move the magistrate functions housed at the Barrister facility into the new courthouse, the trial court administrator and administrative judge did. However, the City has failed to point to any facts to support this argument. The City also contends that it has no authority to determine where magistrate judges are chambered. Nevertheless, as this Court recognized in *Twin Falls County*, section 1-2218 gives cities discretion in locating the *quarters* to house a magistrate's division of the district court. Thus, the City's authority to decide where the judges are chambered is irrelevant.

[16] The City is not, however, foreclosed from pursuing other options. The MOA allows either party to seek review or renegotiation of its terms. If that avenue does not work out, the City has the further option of following the literal language of the 1980 Order by providing suitable and adequate quarters for a magistrate's division to handle city-generated cases. Presumably, this latter course would require modification or termination of the MOA but whether or how that might occur is beyond the scope of our review.

[17] The City contests the panel's reliance on the MOA because the validity of that agreement was not before the panel. The City's argument is unpersuasive, however, as the panel merely relied on the MOA as evidence of the method by which Boise City chose to fulfill its obligations under the 1980 Order – the panel was not concerned with the validity or enforceability of the agreement.

the County should shoulder the full burden of funding the magistrate's division and it is being put upon to carry through with its contractual undertakings pursuant to the MOA. What the City fails to appreciate is that in enacting the court consolidation legislation the Legislature quite clearly contemplated that both counties and cities, particularly those cities that generate a substantial amount of court business, would have a role in shouldering the cost burden of magistrate's division facilities. It was not the Legislature's intent to relieve cities of their pre-existing obligation to maintain local courts but, rather, to provide a unified system and to ensure that where cities provided facilities for the magistrate's division to handle city cases, the facilities were suitable and adequate to do the job. I.C. § 1-2218. As pointed out in *Twin Falls County*:

> "[The magistrate's division] replaced a "patchwork quilt" of local courts which were disjointed in their efforts to administer justice. Probate judges were elected on a partisan ballot with vacancies filled by appointment of county commissioners. Justices of the peace were appointed by the county. Municipal judges were appointed by the cities. In most instances these were part-time positions. Prior to the 1971 reforms, local courts were commonly held in "homes, barbershops, laundries, cafes, or wherever the justice of the peace could be found during judicial business hours . . ."

*Id.* at 404, 146 P.3d at 670 (Schroeder, C.J., dissenting). Thus, the Legislature's intent was to unify and bring order to the system, not to require counties to bear the full burden of providing for the needs of the magistrate's division. Unless the Legislature contemplated that cities could be called upon to continue shouldering the burden of providing court facilities for city-generated cases, no reason existed for the enactment of section 1-2218. The City is not being put upon here to shoulder any burden that the court consolidation legislation did not contemplate a city might have.[18] The *Twin Falls County* decision did not alter that situation.

In sum, *Twin Falls County* did not relieve the City of its obligations under the 1980 Order. The terms of the MOA indicate that the City intended to fulfill its obligations under the

---

[18] The Legislature obviously recognized that a city will generate court cases. Indeed, I.C. § 50-302(1) provides for cities to enact and enforce ordinances. The Legislature also recognized that enforcement of ordinances may entail confinement of violators. I.C. § 50-302A provides that violators are to be confined in the city jail but allows the city to use the county jail provided that the city pay the county for the cost of keeping the violators. Further, I.C. § 20-605 allows a county to charge a city for confinement of convicted persons who were charged by city officers for violation of state motor vehicle laws or city ordinances. Thus, it cannot be said that a city, which we assume will pay the cost of enforcing its ordinances, as well as the cost of confining violators, would be put upon by also having to shoulder the burden of processing those cases through the court system.

Order by contracting with Ada County.[19]  In exchange for the County providing the quarters, facilities, equipment, staff, supplies, and expenses for the magistrate's division, the City would compensate the County for the transferred employees and for its share of the maintenance, operating, and equipment costs.  Such a voluntary arrangement is a permissible way for the City to fulfill its obligations under the 1980 Order.  Thus, the panel correctly concluded *Twin Falls County* was not a substantial and material change of circumstance that would justify rescinding the Order.

## 2.

Next, the City contends that the panel erred by failing to consider the adequacy and suitability of the new Ada County Courthouse.  It maintains that, upon receiving a request for relief from a section 1-2218 order, the district judges are obligated to analyze the suitability and adequacy of existing facilities.  The City argues only upon a finding that existing facilities are unsuitable or inadequate may such an order be upheld.  Because the panel did not consider either the adequacy or suitability of the new Ada County Courthouse, the City contends that the panel's decision upholding the 1980 Order was unlawful.  Thus, the City regards as irrelevant the fact that its filings continue to account for the majority of the magistrate divisions' caseload.

The County argues that the construction of the new courthouse is immaterial to the validity of the Order.  Because filings by Boise City continue to account for the majority of the magistrate divisions' misdemeanor and infraction cases, the original justification for the Order remains despite the new facilities.  The County maintains the City's assertion that there must be an actual necessity for a separate facility is without merit because no such requirement is found in the statute.  Further, the County argues that because the decision to consolidate the magistrate's division into one facility was made jointly by the City and the County, the City should not be relieved of its obligations under the Order based on the existence of the new facility.

The panel did not abuse its discretion in concluding that the City remained obligated under the 1980 Order despite the construction of the new Ada County Courthouse.  Nothing in section 1-2218 requires the district judges to find that existing county facilities are unsuitable or

---

[19]  Additionally, the Boise City Council Resolution approving the MOA specifically acknowledged the City's "continuing responsibility to provide facilities and staffing for the Magistrate's Court" and "affirm[ed] its intent to do so through [the MOA]."

inadequate or that a separate facility is necessary before issuing a section 1-2218 order.[20] Rather, the "suitable and adequate" requirement contained in the statute refers to the type of quarters a city must provide if ordered to house a magistrate's division. The "necessary" requirement refers to the facilities and equipment a city must provide to make the quarters functional for their intended use. Accordingly, the panel did not err in concluding that the construction of the new courthouse was not a substantial and material change of circumstance.

One further observation is necessitated by the posture of this case. This is not a situation where the panel was implementing an order pursuant to section 1-2218. The Order was issued in 1980 and no appeal was taken at that time. Where a panel of judges is considering whether to vacate or modify an existing order the primary consideration relates to the magistrate's division caseload generated by the city. Section 1-2218 is obviously designed to allow the district judges to require a city to provide the necessary facilities to accommodate that caseload. The panel stated as the principal ground for its decision:

> Boise City also argues that the Court should vacate the Order because circumstances have changed substantially since 1980. While it is certainly undeniable that Ada County and Boise City have seen significant changes since 1980, one aspect of community affairs that affects the court system remains unchanged: Boise City accounts for the greatest percentage and the greatest number of misdemeanor and infraction filings in Ada County. This unchanged fact alone mitigates against setting aside the Court's Order of October 9, 1980.

The panel correctly identified and relied upon this primary consideration in declining to vacate the 1980 Order. That, plus the fact that the City voluntarily entered into the MOA, wherein it recognized its continuing responsibility to provide court facilities for city cases and chose to meet its obligation by providing funds instead of facilities, clearly justifies the panel's decision. It is unnecessary to opine what, if any, additional considerations might be appropriate in the event of an initial order under section 1-2218.

**3.**

Lastly, the City maintains the panel's decision ignored the fact that the City no longer receives the statutory court fees authorized by Idaho Code section 31-3201A, which are distributed to the entity that provides the facilities for the magistrate's division. It regards Ada

---

[20] Every county is required to provide a courthouse for the conduct of judicial business. I.C. § 31-1001. The fact that a courthouse may contain more judicial space than necessary to accommodate the present county caseload has no bearing on the responsibilities a city may have to provide for handling of city-generated cases.

County's receipt of the fees as "an additional statutory recognition that the entity providing the facilities is the entity which must pay for its operation." The County contends the fact that the City no longer receives the fees is irrelevant because it "does not mean . . . [the City is] 'not entitled' to receive the fees under the statute."

As mentioned above, Idaho Code section 31-3201A imposes court fees on individuals found guilty of felony, misdemeanor, and infraction offenses. I.C. § 31-3201A(b) & (c). The fees are apportioned to either the county or the city, depending on which entity provided the facility in which the case was filed. *Id.* When a county provides the magistrate court facility, it receives a $5.00 court cost fee for every conviction. *Id.* When a city provides the facility, it receives the $5.00 court cost fee and an additional $2.50 capital facilities fee. *Id.*

The fact that the City no longer directly receives the statutory fees does not mean it has been relieved of its obligations under the 1980 Order. Initially, as part of its agreement with the County, the City would "continue to receive its distribution of fines and court costs" under section 31-3201A.[21] After subsequent negotiations, however, the fee distribution agreement was changed. Under the new arrangement, the County would credit Boise City the $5.00 fee as a "court cost credit," but the County would receive the $2.50 capital facilities fee since it owned the building that housed the consolidated magistrate's division.[22] Thus, the fact that the City no longer received all of the section 31-3201A fees was the result of its reimbursement agreement with Ada County. It was not an implicit recognition that the City was no longer obligated under the 1980 Order. Because the City chose to fulfill its obligations under the 1980 Order by contracting with the County, it is disingenuous for the City to argue that the terms of the agreement somehow relieved it of its obligations under the 1980 Order. The district judges, therefore, did not err in concluding the fee arrangement agreed upon by the parties was not a substantial change of circumstance that justified vacating the Order.

### D.

In declining to vacate the 1980 Order, the panel of district judges rejected Boise City's argument that the Order imposed a duplicative and non-uniform tax in violation of article VII, section 5 of the Idaho Constitution. The panel reasoned that section 1-2218 and the 1980 Order

---

[21] Nevertheless, the County stopped remitting the fees to the City in 2002 after the magistrate's division was consolidated.

[22] The negotiations were between the City and the County Clerk. The final agreement was never reduced to writing, but the City acquiesced in the arrangement until it quit making payments in 2007.

21

do not impose a tax. Even if they did, however, the tax was not duplicative or non-uniform. Either way, the panel concluded the Order was constitutional.

On appeal, Boise City argues the panel erred in concluding that the payments made under the MOA did not constitute a tax. The City argues that the 1980 Order imposed a tax on Boise City taxpayers because it mandated "a forced contribution by the public at large to meet public needs." *See Brewster v. City of Pocatello*, 115 Idaho 502, 505, 768 P.2d 765, 768 (1988). By requiring the City to provide facilities, equipment, staff, personnel, and other expenses for a magistrate's division, the Order imposed a financial liability on the City, thereby allegedly creating a "forced . . . tax levy on city residents." The City also challenges the panel's conclusion that the 1980 Order and section 1-2218 are constitutional. It contends that the Order and statute impose a non-uniform, duplicative tax in violation of article VII, section 5 of the Idaho Constitution. Additionally, it contends the taxes violate equal protection, both facially and as-applied to Boise City.

The County argues that the panel correctly concluded the 1980 Order did not impose a tax on Boise City residents. The County points out that the Order itself did not impose a tax, instead it leaves the method of complying with its requirements up to the City. Further, the County argues that the City has means other than taxation to pay for the obligations imposed by the Order. Specifically, the City could use service fees, fines, and licensing fees to fund the obligations. Finally, the County argues that, even if the Order did impose a tax, the tax is uniform and not duplicative.

A tax is generally defined as "an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes." 84 C.J.S. *Taxation* § 1 (2009). Because taxation is a legislative function, a citizen's obligation to pay a tax "is a purely statutory creation." *Id*. § 2. Thus, taxes may not be assessed or collected until the legislature levies a tax. *Id*. § 423. A statute does not levy a tax unless it "fixes the amount or rate to be imposed." *Id*. § 1.

The City's attempt to characterize the 1980 Order as a tax is unpersuasive. Neither the Order nor section 1-2218 levied a tax on City taxpayers. The language of the Order, which traces the language of the statute, does not even mention taxation let alone require the City to fulfill its obligations under the Order by taxing its residents. Instead, the Order imposes a general obligation on the City to provide suitable and adequate quarters for a magistrate's

division of the district court. It leaves decisions regarding how to fund the facility to the City's discretion. Moreover, neither the Order nor the statute establishes any fixed amount the City must expend to fulfill its obligation of providing suitable and adequate quarters for a magistrate's division. As such, they did not levy a tax.[23] Finally, the purpose of a section 1-2218 order is not to raise general revenue. Such orders are issued for the sole purpose of providing suitable and adequate quarters for a magistrate's division. Consequently, neither the 1980 Order nor section 1-2218 imposed a tax on City taxpayers.

Similarly, the City's payments to the County under the MOA are not the equivalent of a tax assessed by the County. *See, e.g., United States v. Maryland Cas. Co*., 323 F.2d 473, 475 (5th Cir. 1963) (stating that "federal taxes do not arise out of contractual obligations, but rather by federal law"). The City voluntarily entered into the MOA, in which it agreed to fulfill its obligations under the Order by compensating the County. Such a voluntary reimbursement scheme could hardly be compared to a tax. If that were the case, any contract or agreement requiring the City to make payments would constitute taxation.

In sum, neither the 1980 Order, section 1-2218, nor the MOA levied a tax on Boise City taxpayers. Because no tax was imposed, we need not address the City's arguments that the purported tax violated article VII, section 5 of the Idaho Constitution and equal protection.

**E.**

The County requests an award of attorney fees on appeal pursuant to Idaho Code section 12-121. It argues that, as the prevailing party, it is entitled to fees because the City failed to show the panel misapplied well-established law. The City argues that the County is not entitled to attorney fees under section 12-121 because the appeal was not brought frivolously. Further, it contends that section 12-121 does not apply in cases where a county is an adverse party.

Under Idaho Code section 12-121, a court may award attorney fees to the prevailing party in a civil action. I.C. § 12-121. An award of attorney fees pursuant to the section may only be made when the court "is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably and without foundation." *Nelson v. Nelson*, 144 Idaho, 710, 718, 170 P.3d 375, 383 (2007) (quoting *Balderson v. Balderson*, 127 Idaho 48, 54, 896 P.2d 956,

---

[23] Had the Order attempted to levy a tax, it would have been invalid since the panel did not have the authority to impose a tax on the City. *See* 84 C.J.S. *Taxation* § 423 (2009) (stating that levying a tax is a legislative function and not a judicial function).

962 (1995)) (internal quotation marks omitted). Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the trial court incorrectly applied well-established law. *Nelson*, 144 Idaho at 718, 170 P.3d at 383. Conversely, fees generally will not be awarded when "the losing party brought the appeal in good faith and where a genuine issue of law was presented." *Id*.

The County is not entitled to an award of fees under section 12-121.[24] Although the County is the prevailing party on appeal, it failed to demonstrate that the City brought its appeal frivolously, unreasonably, or without foundation. The City's petition raised legitimate legal and factual questions regarding the impact of this Court's decision in *Twin Falls County*. Because the County has not asserted any other basis for an award of fees,[25] its request for fees is denied.

## III.

The panel's order granting the County's motion to intervene and its decision declining to set aside the 1980 Order are affirmed. Neither party is entitled to attorney fees on appeal.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and HORTON CONCUR.

---

[24] Contrary to the City's assertion, Idaho Code section 12-117 does not provide the sole basis for an award of fees in this case. That section permits an award of fees in actions between a "state agency, a city, a county or other taxing district and *a person*." I.C. § 12-117(1) (emphasis added). Here, the action is between two governmental entities, not a governmental entity and a person.

[25] While the County argues it is entitled to fees under "all . . . pertinent statutory and case law," it did not identify that law in its argument or explain why it is entitled to fees under any specific authority. Since the County failed to support its general request with argument and authority, we will not consider the issue. *See Bingham v. Montane Res. Assocs.*, 133 Idaho 420, 427, 987 P.2d 1035, 1042 (1999) ("This Court will not consider issues cited on appeal that are not supported by propositions of law, authority or argument." (quoting *Meisner v. Potlatch Corp.*, 131 Idaho 258, 263, 954 P.2d 676, 681 (1998))).