J. JONES, Justice,
specially concurring.
I concur in the Court’s Opinion, as far as it goes in applying I.C. § 42-1209 to the specific factual situation of this case, but write separately to opine on certain matters not specifically addressed.
The Opinion holds that “a ditch owner’s[6] determination whether to permit an encroachment [in its easement or right-of-way] will be reviewed to determine whether the decision-making process was reasonable, the determination was arbitrary and capricious, or the findings upon which the determination was reached were clearly erroneous.” Thus, a decision made by an irrigation district pursuant to Section 42-1209 must be the result of a reasonable decision-making process and the determination must be based upon findings. A reasonable decision-making process implicates procedures such as the Legislature has required for state administrative agencies in I.C. § 67-5242 and for local planning agencies in Section 67-6535. That is, a right to notice, a meaningful opportunity to be heard, a record of the proceedings, findings of fact, and a reasoned decision. While the Legislature has not specified the type of procedure to be employed pursuant to I.C. § 42-1209, this Court has the inherent “power to fashion the procedures necessary to perform [its] duties.” City of Boise v. Ada County, 147 Idaho 794, 802, 215 P.3d 514, 522 (2009). The process requirements we here adopt for review of irrigation district decisions under Section 42-1209 will help to ensure the due process rights of the adverse party and a reviewable record on appeal. By adopting standards comparable to those mandated by the Legislature for other proceedings, the Court has a tested yardstick to ensure against arbitrary and capricious decision-making.
The City raises a number of concerns regarding the effect of the district court’s decision on its historic drainage or flowage rights, the irrigation district’s ability to exercise self-help, and the like. Specifically, the City points to a position statement contained in the record wherein Pioneer states:
[Caldwell’s storm water runoff] should not be drained through existing irrigation drainage facilities even if the post development land proposed for such drainage is land that used to be historically drained in such a manner. Existing irrigation drainage facilities were designed to drain excess water from undeveloped agricultural lands and were not designed, constructed and/or not maintained to accept storm water runoff from developed lands.
However, the City’s concerns may be overstated. Section 42-1209 does not purport to affect drainage, flowage, or runoff rights that predate the July 1, 2004 effective date of Section 42-1209. Nor does it affect anything other than physical encroachments placed in an easement or right-of-way, such as roads, utilities, fences, gates, pipelines, structures, or other objects. Section 42-1209 does not restrict or enhance any right of self-help beyond that available under the common law. Indeed, the Court cites Carson v. Elliott, 111 Idaho 889, 891, 728 P.2d 778, 780 (Ct.App.1986) for the proposition that an “easement owner has a right to remove obstructions *604 unreasonably interfering with use of the easement, so long as there is no breach of the peace.” As the Court points out, this common law rule predated the enactment of the statute and does not result in an expansion of the right of self-help. Further, the Court does not purport to expand the review procedure adopted here to any other statutes or situations. As previously noted, the Opinion only addresses the three issues decided by the district court — the review process for Pioneer’s decisions under Section 42-1209, whether Pioneer has the right of self-help, and whether Pioneer enjoys exclusive rights in its primary easements and rights-of-way. The Opinion does not purport to address other than these three limited issues.
Chief Justice BURDICK and Justice W. JONES concur.

. I would read "ditch owner's” to mean an irrigation district because that is the specific entity involved in this case. Ditch owners other than irrigation districts — Carey act operating companies, nonprofit irrigation entities, and lateral ditch associations — are private, non-governmental entities. Drainage entities may be either private or quasi-govemmental. There may well be valid legal or policy reasons for confining our holding to governmental entities or irrigation districts specifically, but that is beyond the scope of our undertaking in this case. Since our decision is limited to the issues raised in the City’s motion for permissive appeal, a determination as to whether the standard of review we adopt here applies to entities other than irrigation districts remains to be decided on another day, in another case.